BULOVA WATCH COMPANY, INC., A CORPORATION v. BRAND DIS-
TRIBUTORS OF NORTH WILKESBORO, INC., A CORPORATION, AND
ROBERT YALE

BULOVA WATCH COMPANY, INC., A CORPORATION v. MOTOR MAR-
KET, INC., A CORPORATION, d/b/a BOB'S JEWELRY & LOAN, AND
ROBERT YALE

No. 67

(Filed 1 July 1974)

1. **Statutes § 4— determination of constitutionality — other factual situations**

   The Supreme Court will not undertake to pass upon the validity of
   a statute as it may be applied to factual situations materially different
   from that before it.

2. **Appeal and Error § 69— overruling of prior decision**

   A decision of the Supreme Court, subsequently concluded to have
   been erroneous, may properly be overruled when such action will not
   disturb property rights previously vested in reliance upon the earlier
   decision.

3. **Constitutional Law § 1— construction of State Constitution**

   In the construction of a provision of the State Constitution, the
   meaning given by the U. S. Supreme Court to even an identical term
   in the U. S. Constitution is, though highly persuasive, not binding
   upon the N. C. Supreme Court.

4. **Constitutional Law §§ 7, 19, 24; Monopolies § 1; Trademarks and
   Trade names— Fair Trade Act — applicability to non-signers — un-
   constitutionality**

   Provision of G.S. 66-56 extending the force and effect of a "fair
   trade" agreement to a seller not a party thereto is unconstitutional
   because it delegates legislative power to a private corporation in
   violation of Art. II, § 1, of the Constitution of North Carolina, and
   because it deprives the non-signer of such agreement of liberty con-
   trary to the law of the land in violation of Art. I, § 19, thereof.
   *Lilly & Co. v. Saunders,* 216 N.C. 163 is overruled.

APPEAL by defendants from the Court of Appeals which
affirmed the judgment of *Rousseau, J.,* at the 10 September 1973
Session of WILKES, the decision of the Court of Appeals being
reported in 20 N.C. App. 648, 202 S.E. 2d 350.

The plaintiff is a well known manufacturer of watches and
other products which it sells throughout the nation to retail
jewelry stores for resale. Within this State, it sells its watches
to retailers with whom it enters into a "Fair Trade Agreement."

By such agreement the retailer agrees not to sell or offer for sale any watch or other article, bearing the plaintiff's brand or trade name, at a price different from that shown on a retail price list compiled and furnished by the plaintiff, who reserves the right to change the listed prices· from time to time. The agreement further provides that the plaintiff agrees to employ all reasonable and lawful means, including legal action, to obtain and enforce general observance of such prices by retailers.

The corporate defendants operate retail establishments selling watches, jewelry and like products in North Wilkesboro, the individual defendant being the president and principal stockholder of each such corporation. None of the defendants has made any contract with the plaintiff, or with any other person, restricting such defendant's right to sell any watch or other product manufactured by or bearing the brand, name or trademark of the plaintiff, or restricting such defendant's right to fix, as it may see fit, the price for which it will sell such article.

Each corporate defendant, having notice of the plaintiff's "Fair Trade Agreements" with the various retail outlets in this State, sold at retail, for prices less than those listed by the plaintiff, watches manufactured by the plaintiff, bearing the plaintiff's brand and trade name and the retail price so listed. The watches so sold were not purchased by such defendant from the plaintiff, but were purchased at bankruptcy sales or from various other parties. The defendants propose to continue to offer for sale watches and other articles, bearing the plaintiff's brand or trade name, at prices less than those established by the plaintiff's "Fair Trade Agreements."

· Watches and other products manufactured by the plaintiff are sold in North Carolina in fair and open competition with like products of other manufacturers. The plaintiff has repeatedly taken legal action and, by other lawful means, has consistently endeavored to prevent sales of its products at retail in North Carolina for prices less than those established by its price lists issued pursuant to its "Fair Trade Agreements."

The parties having waived trial by jury, the Superior Court found the foregoing facts, which were stipulated, and concluded that the defendants had violated the plaintiff's "Fair Trade Agreement" and, thereby, had violated the North Carolina Fair Trade Act and that such Act "as it applies to the defendants, non-signers of any Fair Trade Agreement with the plain-

tiff, is constitutional under the Constitution of the State of North Carolina." Further concluding that the plaintiff has no adequate remedy at law and has been damaged by such actions of the defendants, the Superior Court entered its judgment permanently enjoining the defendants "from directly or indirectly advertising, offering for sale at retail, or selling at retail the plaintiff's watches or other jewelry products bearing the plaintiff's trademarks, brands or trade names * * * at prices less than the stipulated minimum retail selling prices established by the plaintiff's fair trade agreements entered into by the plaintiff with retailers of such watches and other jewelry products in the State of North Carolina * * *."

The defendants appealed, contending in the Court of Appeals, as they had done in the Superior Court, that the North Carolina Fair Trade Act is unconstitutional, insofar as it applies to a non-signer of such "Fair Trade Agreement." In each of the lower courts they contended that the Act is a violation of the Law of the Land Clause, Article 1, § 19, of the Constitution of North Carolina in that: (1) It arbitrarily limits the property rights of a retailer in a product which he has purchased and his liberty to dispose of the article as he sees fit; (2) it has no relation to the health, safety or welfare of the citizens of North Carolina, but is an unwarranted and unconstitutional use of the police power of the State to enforce an artificial price fixed by the plaintiff; and (3) it is an unconstitutional delegation to private persons, firms and corporations of the power to fix prices without any standard of administration or control by any governmental agency.

The Court of Appeals affirmed the judgment of the Superior Court, relying upon *Lilly & Co. v. Saunders,* 216 N.C. 163, 4 S.E. 2d 528. From that decision the defendants appealed as a matter of right because of the constitutional question presented.

An affidavit by one of the plaintiff's authorized retailers, offered by the plaintiff in support of its motion in the Superior Court for summary judgment, which motion was denied, states, among other things, "Bulova is the only watch manufacturer from whom I can purchase watches without fear that the watches will also be sold at discount prices in chain stores and discount houses."

*McElwee & Hall by John E. Hall; and W. G. Mitchell for defendant appellants.*

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston by Mark R. Bernstein and W. Samuel Woodard for plaintiff appellee.*

LAKE, Justice.

The pertinent portions of the North Carolina Fair Trade Act, enacted in 1937, are as follows:

"GS 66-52: *Authorized contracts relating to sale or resale of commodities bearing trademark, brand or name.*— No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, the trademark, brand, or name of the producer or distributor of such commodity and which commodity is in free and open competition with commodities of the same general class produced or distributed by others, shall be deemed in violation of any law of the State of North Carolina by reason of any of the following provisions which may be contained in such contract:

"(1) That the *buyer* will not resell such commodity at less than the minimum price *stipulated by the seller.* (Emphasis added.)

"(2) That the *buyer* will require of any dealer to whom he may sell such commodity an agreement that he will not, in turn, resell at less than the minimum price stipulated by the seller. (Emphasis added.)

"(3) That the *seller* will not sell such commodity: (Emphasis added.)

"a. To any wholesaler, unless such wholesaler will agree not to resell the same to any retailer unless the retailer will in turn agree not to resell the same except to consumers for use and at not less than the stipulated minimum price, and such wholesaler will likewise agree not to resell the same to any other wholesaler unless such other wholesaler will make the same agreement with any wholesaler or retailer to whom he may resell; or

"b. To any retailer, unless the retailer will agree not to resell the same except to consumers for use and at not less than the stipulated minimum price.

"GS 66-55. *Resales not precluded by contract.*—No contract containing any of the provisions enumerated in § 66-52 shall be deemed to preclude the resale of any commodity covered thereby without reference to such contract in the following cases:

\* \* \* \*

"(4) By any officer acting under an order of court.

\* \* \*

"GS 66-56. *Violation of contract declared unfair competition.*—Willfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this article, *whether the person so advertising, offering for sale or selling is or is not a party to such contract,* is unfair competition and is actionable at the suit of any person damaged thereby." (Emphasis added.)

In *Lilly & Co. v. Saunders,* 216 N.C. 163, 4 S.E. 2d 528, 125 A.L.R. 1308 (1939), this Court held the Fair Trade Act constitutional, Justice Barnhill, later Chief Justice, dissenting. The judgments of the Court of Appeals and of the Superior Court in the present case are in accord with that decision. The defendants ask us to reconsider that decision and to determine anew the constitutionality of the Fair Trade Act, specifically the nonsigner provision contained in G.S. 66-56, substantially for the reasons set forth in the dissenting opinion of Justice Barnhill. We allowed certiorari for that purpose.

The articles, bearing the plaintiff's trade name, sold and proposed to be sold by the defendants were and are lawfully acquired and owned by such defendant, having been purchased by such defendant "at bankruptcy sales and from various parties other than the plaintiff." Nothing in the record suggests that any defendant acquired any such article through the breach by its supplier of any contract between such supplier and the plaintiff. The prices charged for such products by each such defendant have been satisfactory to it and to its respective customers. Nothing in the record indicates that such selling de-

fendant has failed to make a profit, deemed reasonable by it, upon any such sale, or proposes to do so.

**[1]** The authority of this Court to declare an act of the Legislature unconstitutional arises from its duty to determine, in accordance with applicable and valid rules of law, the rights of litigants in a controversy brought before it by proper procedure. *State v. Lueders,* 214 N.C. 558, 200 S.E. 22. Consequently, when asked to determine the constitutionality of a statute, the Court will do so only to the extent necessary to determine that controversy. It will not undertake to pass upon the validity of the statute as it may be applied to factual situations materially different from that before it. *Nicholson v. Education Assistance Authority,* 275 N.C. 439, 447, 168 S.E. 2d 401; *Person v. Doughton,* 186 N.C. 723, 120 S.E. 481; *Commissioners v. State Treasurer,* 174 N.C. 141, 149, 93 S.E. 482, 2 A.L.R. 726; 16 C.J.S., Constitutional Law, § 94, p. 321. Consequently, we do not have before us upon this appeal, and we express no opinion as to the validity of, any contract authorized by G.S. 66-52 as between the parties thereto. The question for decision upon this appeal is, Does the existence of such a contract between the plaintiff and a retailer entitle the plaintiff to enjoin one not a party thereto from selling an article, bearing the plaintiff's trade name, lawfully acquired by such person, at a price less than that specified by the plaintiff?

It is obvious that, nothing else appearing, a contract between A and B cannot deprive C of his preexisting liberty to contract with D. Here, the plaintiff contends something else appears, namely, G.S. 66-56. The clear intent of the statute is so to restrict C's liberty of contract. Thus, we must determine its validity.

**[2]** This Court attaches great importance to the doctrine of *stare decisis.* Observance of that doctrine is not only an expression of our respect for the opinions of our predecessors. It promotes stability in the law and uniformity in its application, which, in turn, enable people to predict with reasonable accuracy the consequences of their acts and business transactions. It gives protection to property rights acquired in reliance upon past decisions of this Court and marks the path which the trial courts may follow with some degree of assurance. *Potter v. Water Co.,* 253 N.C. 112, 116 S.E. 2d 374; *Williams v. Hospital,* 237 N.C. 387, 391, 75 S.E. 2d 303; *State v. Fulton,* 149 N.C. 485, 63 S.E. 145; *Hill v. Railroad,* 143 N.C. 539, 573-575, 55 S.E.

854. Nevertheless, a decision of this Court, subsequently concluded to have been erroneous, may properly be overruled when such action will not disturb property rights previously vested in reliance upon the earlier decision. See, *Rabon v. Hospital*, 269 N.C.1, 152 S.E. 2d 485. As this Court, speaking through Justice Johnson, said in *State v. Mobley*, 240 N.C. 476, 487, 83 S.E. 2d 100, "The doctrine of *stare decisis* should never be applied to perpetuate palpable error." In that respect the present case is much like *State v. Ballance*, 229 N.C. 764, 51 S.E. 2d 731. In that case, as here, this Court reconsidered its earlier decision holding valid a statute regulating business activity. Speaking for the Court, Justice Ervin said:

> "[T]he law must be characterized by stability if men are to resort to it for rules of conduct. These considerations have brought forth the salutary doctrine of *stare decisis* which proclaims, in effect, that where a principle of law has become settled by a series of decisions, it is binding on the courts and should be followed in similar cases. [Citations omitted.]

> "But the case at bar does not call the rule of *stare decisis* in its true sense into play. Here, no series of decisions exists. [Citation omitted.] We are confronted by a single case which is much weakened as an authoritative precedent by a dissenting opinion 'of acknowledged power and force of reason.'"

Here, the plaintiff asserts no property right acquired by it in reliance upon the decision of *Lilly & Co. v. Saunders, supra*. It has, in the intervening years, expended substantial sums in advertising its products for the purpose of making its tradename, "Bulova," synonymous, in the public mind, with high quality. It has entered into contracts throughout the State with retailers for the distribution of these products. There is nothing, however, in the record to indicate that the plaintiff has made any investment or substantial expenditure in this State which it would not have made had the opposite result been reached in *Lilly & Co. v. Saunders, supra*, or which it has not made, in comparable degree, in other states of the Union where no Fair Trade Act is in effect.

The defendants assert that the provision of G.S. 66-56, extending the force and effect of a "fair trade" contract to a seller not a party thereto, is invalid because it is an unlawful

delegation of legislative power to a private corporation and also because it deprives the defendants of their liberty and property otherwise than by the law of the land, in violation of Article I, § 19, of the Constitution of North Carolina.

In *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.*, 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, the Supreme Court of the United States had before it the Illinois Fair Trade Act, which, in all respects material hereto, is identical with the North Carolina Act. The Court, in an opinion by Mr. Justice Sutherland, held that the provision of the Act, extending the force of the "fair trade" contract to a non-signer thereof, was not "so arbitrary, unfair or wanting in reason as to result in a denial of due process," and that there was "nothing in this situation to justify the contention that there is an unlawful delegation of power to private persons to control the disposition of the property of others."

[3] The decisions of the Supreme Court of the United States as to the construction and effect of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States are, of course, binding upon this Court. It is also true that the expression "The Law of the Land," used in Article I, § 19, of the Constitution of North Carolina, is synonymous with "Due Process of Law." *Rice v. Rigsby* and *Davis v. Rigsby*, 259 N.C. 506, 518, 131 S.E. 2d 469. However, in the construction of the provision of the State Constitution, the meaning given by the Supreme Court of the United States to even an identical term in the Constitution of the United States is, though highly persuasive, not binding upon this Court. *State v. Barnes*, 264 N.C. 517, 520, 142 S.E. 2d 344. See also, *Corning Glass Works v. Ann & Hope, Inc. of Danvers*, _____ Mass. _____, 294 N.E. 2d 354.

Consequently, neither *Lilly & Co. v. Saunders, supra*, nor *Old Dearborn Distributing Co. v. Seagram-Distillers Corp., supra*, prevents us from a redetermination of the validity of the provision of G.S. 66-56, insofar as it purports to extend to one not a party thereto the effect of a fair trade contract made by the plaintiff with another retailer.

[4] It is our opinion, and we so hold, that this "non-signer" provision of G.S. 66-56 is unconstitutional, both because it delegates legislative power to a private corporation, in violation of Article II, § 1, of the Constitution of North Carolina, and

because it deprives the non-signer of liberty, contrary to the law of the land, in violation of Article I, § 19, thereof.

Article II, § 1, of the Constitution of North Carolina, provides, "The legislative power of the State shall be vested in the General Assembly." It is well settled that the Legislature may not delegate its power to make laws even to an administrative agency of the government. *Foster v. Medical Care Commission,* 283 N.C. 110, 195 S.E. 2d 517; *Turnpike Authority v. Pine Island,* 265 N.C. 109, 143 S.E. 2d 319; *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310. As Justice Johnson, speaking for the Court, said in *Coastal Highway v. Turnpike Authority, supra:* "[T]he legislative body must declare the policy of the law, fix legal principles which are to control in given cases, and provide adequate standards for the guidance of the administrative body or officer empowered to execute the law. * * * In short, while the Legislature may delegate the power to find facts or determine the existence or nonexistence of a factual situation or condition on which the operation of a law is made to depend, or another agency of the government is to come into existence, it cannot vest in a subordinate agency the power to apply or withhold the application of the law in its absolute or unguided discretion." It follows, necessarily, that the Legislature may not vest in a private corporation the authority to determine "in its absolute or unguided discretion" the price at which another, with whom it has no contractual relation, may sell to a willing buyer an article lawfully acquired and owned by him. See, *Wilcher v. Sharpe,* 236 N.C. 308, 312, 72 S.E. 2d 662.

Under the rule so stated in *Coastal Highway v. Turnpike Authority, supra,* the Legislature has properly delegated to the Utilities Commission the authority to fix, in accordance with standards and procedures prescribed by the Legislature itself and subject to judicial review, the prices at which the public utilities in the State may sell their services. By contrast, under the North Carolina Fair Trade Act, the producer of any article bearing its trademark or trade name may, if it so desires, make a contract with a single retailer in North Carolina that such retailer will, upon his own sales, charge the retail price set by the producer, may then give notice of such contract to all other retailers in the State and may thereby cause it to be unlawful for such other retailers thereafter to sell, at prices satisfactory to them and to their customers, such articles lawfully acquired by them. See: *Rogers-Kent, Inc. v. General Electric Co.,* 231 S.C.

636, 99 S.E. 2d 665, 668; *Remington Arms Co., Inc. v. Skaggs,* 55 Wash. 2d 1, 345 P. 2d 1085. The price so fixed need have no relation to the cost to such retailer, to a reasonable profit to him or to any other standard. When so fixed, it is subject to change by the producer at will from time to time and with no right in any retailer to be heard by anyone.

A recent decision of the Supreme Judicial Court of Massachusetts, *Corning Glass Works v. Ann & Hope, Inc. of Danvers, supra,* holds the non-signer clause of the Fair Trade Act of Massachusetts, which is similar to G.S. 66-56, is an unconstitutional delegation of legislative power, overruling an earlier decision of that Court. To the same effect are: *Olin Mathieson Chemical Corp. v. White Cross Stores, Inc.,* No. 6, 414 Pa. 95, 199 A. 2d 266; *House of Seagram, Inc. v. Assam Drug Co.,* 85 S.D. 27, 176 N.W. 491; *Dr. G. H. Tichenor Antiseptic Co. v. Schwegmann Brothers Markets,* 231 La. 51, 90 So. 2d 343.

In *Lilly & Co. v. Saunders, supra,* the majority opinion stated: "But the law delegates nothing. At the most it lifts the ban supposed to rest by virtue, largely, of public policy, against contracts fixing the resale price." G.S. 66-56, however, goes far beyond a mere lifting the previously existing ban against price fixing contracts illustrated by *Dr. Miles Medical Co. v. Park & Sons Co.,* 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502. G.S. 66-56 undertakes to extend the reach of such contract so as to enable the producer of the article to lay hold upon and restrict the liberty of a retailer with whom the producer has no contract.

*Lilly & Co. v. Saunders, supra,* relied heavily upon the statement in *Old Dearborn Distributing Co. v. Seagram-Distillers Corp., supra,* to the effect that a statute such as G.S. 66-56 is not an unlawful delegation of legislative power to private persons because "the restriction, already imposed with the knowledge of [the defendant retailer], ran with the acquisition and conditioned it." This concept of a restrictive covenant running with an article of personal property was accepted, without discussion or citation of other authority, by the majority opinion in *Lilly & Co. v. Saunders, supra.* We need not presently determine the validity of this concept for G.S. 66-56 is not limited to resales by non-signers of articles purchased from suppliers who have so contracted with the producer. Nothing in the present record indicates that these defendants purchased the watches which they have sold, or those they now propose to sell, from a supplier who was bound by a "fair trade" agreement with the

Watch Co. v. Brand Distributors and Watch Co. v. Motor Market

plaintiff. The record shows that some of these watches were acquired by them at bankruptcy sales, to which sales the Fair Trade Act does not apply. G.S. 66-55 (4). Furthermore, there are now ten states which have no Fair Trade Act and many more in which, by reason of legislative or judicial action, the reach of a "fair trade" contract does not extend to sales by retailers who are not parties to it. See: Shearin, *North Carolina Fair Trade Act*, 8 Wake Forest Law Review 45; *Corning Glass Works v. Ann & Hope, Inc. of Danvers, supra; House of Seagram, Inc. v. Assam Drug Co., supra*. The present Virginia statute, for example, does not contain a non-signer clause. Shearin, *North Carolina Fair Trade Act*, 8 Wake Forest Law Review 45, 57. The South Carolina Court has declared the non-signer clause of that State's Fair Trade Act unconstitutional. *Rogers-Kent, Inc. v. General Electric Co., supra*. The record shows the Post Exchange at Fort Bragg in this State is permitted to sell free from the "fair trade" limitation. Thus, by purchasing in Virginia or South Carolina from suppliers not parties to a "fair trade" contract, or in North Carolina, at bankruptcy sales or at the Fort Bragg Post Exchange, the defendants would acquire articles to which no restrictive covenant or condition was attached. Yet, G.S. 66-56, by its terms, would apply to a resale of such articles. The restrictive covenant theory does not support the statute. The validity of the concept was expressly rejected by the Supreme Court of Louisiana. *Dr. G. H. Tichenor Antiseptic Co. v. Schwegmann Brothers Markets, supra*.

In our opinion, G.S. 66-56 clearly delegates to producers and distributors of trademarked articles legislative powers.

G.S. 66-56, in its application to non-signers of fair trade contracts, is also invalid for the reason that it violates Article I, § 19, of the Constitution of North Carolina. The term "liberty," as used in this provision of the Constitution, is as extensive as is the same term used in the Fourteenth Amendment to the Constitution of the United States.

In *Allgeyer v. Louisiana*, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832, the Supreme Court of the United States, speaking through Mr. Justice Peckham, said:

"The liberty mentioned in that [Fourteenth] amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by in-

carceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned."

Obviously, this liberty of contract is not absolute. Like the other aspects of liberty, it may be reasonably restricted by legislation, otherwise valid, for the protection of the public health, safety, morals or welfare, including economic welfare. As was observed in *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, there is nothing "peculiarly sacrosanct about the price one may charge for what he makes or sells," and when the economic welfare of the public so requires, it is within the power of the state to fix a minimum as well as a maximum price for the sale of a commodity, even though the seller is not a public utility. It is also true that, within constitutional limits, it is the function of the Legislature, not of the courts, to determine the economic policy of the State and this Court may not properly declare a statute invalid merely because the Court deems it economically unwise. *Mitchell v. Financing Authority*, 273 N.C. 137, 144, 159 S.E. 2d 745. It is, however, the duty of this Court to declare invalid a statute which forbids one who has lawfully acquired an article of commerce to sell it at a price satisfactory to himself, unless there is some reasonable basis for the belief that the benefit to the public therefrom outweighs the infringement upon the owner's liberty of contract.

In determining whether a tax is direct or indirect, Mr. Justice Holmes observed, "Upon this point a page of history is worth a volume of logic." *New York Trust Co. et al v. Eisner*, 256 U.S. 345, 349, 41 S.Ct. 506, 65 L.Ed. 963. Our predecessors cited this observation by the great Justice in *Lilly & Co. v. Saunders, supra*, in support of their location of the point of reasonable balance between liberty of contract and governmental regulation of price. We, however, have the advantage of access to another page of history. At the time *Lilly & Co. v. Saunders, supra*, was decided, practically every state in the Union had adopted a Fair Trade Act and in many of them the courts had sustained the constitutionality of the legislation. This was in the post-Depression era of the late 1930s when governmental

regulation of the economy was at the height of its popularity. In contrast, the Supreme Judicial Court of Massachusetts noted in *Corning Glass Works v. Ann & Hope, Inc. of Danvers, supra,* "In 1972 * * * one source reports that out of the forty states which presently have such legislation, twenty-three have declared their acts unconstitutional as applied to noncontracting third parties, fifteen have declared theirs to be constitutional in this respect and two have not ruled on the question." By both legislative and judicial actions, the fair trade tide continues to ebb. See: *Remington Arms Co., Inc. v. Skaggs, supra, House of Seagram, Inc. v. Assam Drug Co., supra;* Shearin, North Carolina Fair Trade Act, 8 Wake Forest Law Review 45, 57. An article in The Wall Street Journal for May 10, 1974, page 1, column 1, asserts:

> "Many fair-trade laws were passed in the early 1930s when many stores closed because of the Depression; fair trade was designed to keep the remaining stores profitable. As recently as 1941, 45 states permitted manufacturers to assert fair-trade prices and enforce them through the courts. In the wake of the postwar discount merchandising revolution and the trend toward pro-consumer legislation, only sixteen states retain the laws [as to non-signers] * * * ."

Obviously, the popularity or non-popularity of legislation in other states does not determine its constitutionality in North Carolina, but it does constitute some evidence as to the relation between the legislation and the public's economic welfare. The record indicates no diminution of the plaintiff's ability to market its products in states where the former fair trade legislation has been repealed or held invalid as applied to non-signers of the fair trade contracts. The record contains an affidavit by a North Carolina retailer, offered in evidence by the plaintiff, which states, "Bulova is the only watch manufacturer from whom I can purchase watches without fear that the watches will also be sold at discount prices in chain stores and discount houses." The necessary inference is that Bulova's competitors have not found it necessary to resort to fair trade contracts in order to sell their products in this State. Though we might take judicial notice of the well known fact that throughout North Carolina watches made by other manufacturers are widely sold, that is not necessary for the plaintiff contends, as it must do in order to support its contracts, that its products are in free and open competition with products of a like kind manufactured by others.

Thus, there is no persuasive evidence that G.S. 66-56, as applied to non-signers of "fair trade" agreements, is necessary to protect a producer of a trademarked article against destructive price cutting.

In *Lilly & Co. v. Saunders, supra,* this Court took the view that a sale of a trademarked or trade named article by a non-signer retailer at a price less than that fixed by the producer is an unfair use of such trademark or trade name. In our opinion, this is an overstatement of the rights protected by the trademark or trade name. The purpose of the trademark or trade name is to assure the ultimate purchaser for use that the article is the genuine product of the owner of such trademark or trade name and, therefore, is of the quality which the public associates with that mark or name. Thereby, it promotes the demand for the producer's product. To protect the producer and the public from fraud the law does not permit a rival producer to affix such mark or name to his product so as to palm it off as the product of the owner of the mark or name. The reputation of the product for quality is not impaired by its sale by the retailer at a lower price than that customarily charged. Apart from the Fair Trade Act, the producer of a trademarked article has no right to control the price for which it may be resold by his customer, nothing else appearing. *Dr. Miles Medical Co. v. Park & Sons Co., supra.* As the Massachusetts Court said in *Corning Glass Works v. Ann & Hope, Inc., of Danvers, supra:*

> "Once Ann & Hope has acquired glassware not subject to any restriction—for example, by a purchase in Rhode Island, where there is no 'fair trade' law—the fact that the glassware carries a Corning trade mark gives Corning no property interest in the glassware, and a resale by Ann & Hope is a sale of its own property. Ann & Hope does not sell Corning's trademark or good will or any interest therein."

*Lilly & Co. v. Saunders, supra,* also relied upon the distinction between a vertical and a horizontal price fixing agreement, a position which is generally adopted by the supporters of the Fair Trade Acts. The vertical agreement is one running from the producer down through the distributor to the ultimate retailer. The horizontal agreement is one made between dealers at the same level. The horizontal agreement is deemed contrary to the public interest because it stifles competition, whereas the vertical agreement is thought to leave to the public the benefit of competition at a given level of the marketing procedure. The

difficulty with this position is that when the vertical agreement is extended by G.S. 66-56 to all retailers, including those who have not signed the "fair trade" agreement, the effect on competition in the marketing of the particular article is exactly the same as is the effect of a horizontal price fixing agreement. Aycock, Anti-Trust and Unfair Trade Practice Law in North Carolina—Federal Law Compared, 50 North Carolina Law Review 199, 219; Shearin, North Carolina Fair Trade Act, 8 Wake Forest Law Review 45, 59.

By the Fair Trade Act the Legislature has undertaken to confer upon the plaintiff the authority to fix the price at which these defendants, with whom it has no contract, may sell an article produced by the plaintiff but lawfully acquired by the defendants in legitimate channels of trade. There is no restriction placed by the Act upon this authority. The plaintiff is free to set the price at whatever figure pleases it. The defendants have no opportunity to be heard and no right to judicial review. It is immaterial, under this Act, that the defendants, by reason of more efficient merchandising practices or otherwise, may, by charging a price lower than that fixed by the plaintiff, make a profit on their resales which is reasonable and entirely satisfactory to them. *Lilly & Co. v. Saunders, supra,* at page 181. We find no public interest and no property right of the plaintiff in its trademark which can reasonably be deemed to justify this interference with the defendants' freedom of contract. We, therefore, conclude that G.S. 66-56, insofar as it applies to nonsigners of the "fair trade" agreement, deprives such non-signing retailers of their liberty of contract contrary to the law of the land. Decisions of other courts reaching a like conclusion include: *Union Carbide & Carbon Corp. v. White River Distributors,* 224 Ark. 558, 275 S.W. 2d 455; *Olin Mathieson Chemical Corp. v. Francis,* 134 Colo. 160, 301 P. 2d 139; *Shakespear Co. v. Lippman's Tool Shop & Sporting Goods,* 334 Mich. 109, 54 N.W. 2d 268; *Skaggs Drug Center v. General Electric Co.,* 63 N.M. 215, 315 P. 2d 967; *Rogers-Kent, Inc. v. General Electric Co., supra* (South Carolina); and *Remington Arms Co., Inc. v. Skaggs, supra* (Washington).

We, therefore, conclude that G.S. 66-56, as applied to nonsigners of the "fair trade" agreement, is unconstitutional. *Lilly & Co. v. Saunders, supra,* is hereby overruled. The injunction issued by the Superior Court in this action is, therefore, vacated.

Reversed.