TREANTS ENTERPRISES, INC. v. ONSLOW COUNTY, THE SHERIFF OF ON-
SLOW COUNTY IN HIS OFFICIAL CAPACITY; AND THE ONSLOW COUNTY TAX
COLLECTOR IN HIS OFFICIAL CAPACITY

No. 864SC312

(Filed 25 November 1986)

1. Constitutional Law § 4— Movie Mates—ordinance—constitutionality—standing
   of business to raise

   Petitioner had standing to contest the constitutionality of an ordinance
   regulating businesses providing male or female companionship where peti-
   tioner alleged that it operated business establishments called Movie Mates in
   which patrons could have a person watch a movie with them for a fee; defend-
   ants admitted in their answer that the ordinance would apply to Movie Mates
   businesses; and the purpose of the drafters of the ordinance was to severely
   regulate the very type of business establishments operated by petitioners.

2. Constitutional Law § 4— Movie Mates ordinance—invasion of privacy of em-
   ployees and patrons—standing of business to raise

   Petitioner, the owner of Movie Mates businesses, had standing to contest
   the constitutionality of an ordinance regulating such businesses based on inva-
   sion of the privacy of employees and customers where neither the employees
   nor the patrons would be subject to prosecution for violation of the ordinance,
   but their access to employment or to the businesses' services would be re-
   stricted without a forum for the assertion of their rights.

3. Constitutional Law § 14— Movie Mates ordinance—overbroad—violation of
   state constitution

   An Onslow County ordinance which was aimed at Movie Mates businesses
   violated Article I, §§ 1 and 19 of the North Carolina Constitution because it
   purported to regulate every business that provided companionship, not merely
   Movie Mates businesses, and to that extent was not rationally related to any
   legitimate governmental objective.

4. Constitutional Law § 14— Movie Mates ordinance—overbroad—severability
   clause ineffective

   There were no provisions which could be given effect in an unconstitu-
   tional Onslow County ordinance regulating businesses which provided compan-
   ions, despite a severability clause, because all parts of the ordinance were
   related to the unconstitutional purpose.

5. Constitutional Law § 17— Movie Mates ordinance—invasion of privacy

   An Onslow County ordinance which regulated businesses providing com-
   panionship violated the right to privacy of patrons under both the federal and
   state constitutions due to the extensiveness of the data to be recorded, the re-
   quirement that the records be permanent, and the lack of any protections
   against unwarranted disclosure or limits upon use of the records.

APPEAL by defendants from *John B. Lewis, Jr., Judge*. Order entered 31 October 1985 in Superior Court, ONSLOW County. Heard in the Court of Appeals 16 September 1986.

*Jeffrey S. Miller for plaintiff appellee.*

*Roger A. Moore for defendant appellant.*

BECTON, Judge.

Treants Enterprises, Inc. (Treants), the operator of three business establishments in Onslow County known locally as "Movie Mates," brought this action to enjoin the enforcement of a county ordinance subjecting businesses which provide male or female "companionship" to various licensing requirements. By an order entered 29 October 1985, Superior Court Judge John B. Lewis, Jr. permanently enjoined the defendants, Onslow County, the Sheriff of Onslow County, and the Onslow County Tax Collector (Defendants), from enforcing the ordinance. From that judgment, Defendants appeal. We affirm.

This appeal primarily concerns the constitutionality of the challenged ordinance. Other issues on appeal relate to Treants' standing to challenge the ordinance, preemption by state law, the imposition of an illegal tax, and severability.

I

A. The Ordinance: Its Scope and Coverage

On 19 June 1985, Onslow County enacted "An Ordinance Regulating Businesses Providing Male or Female Companionship." Summarized briefly, the ordinance provides: No person, partnership, corporation, or association may operate "a business providing or selling male or female companionship" without first obtaining a license from the Onslow County Tax Collector. A male or female companionship business is defined as "any person, firm, corporation, or association engaged in the business of providing or selling male or female companionship in exchange for money or other valuable consideration." A separate license is required for each location or premises used for the purpose of providing companionship, and such business may not be conducted in any place other than that designated by the license. Every applicant for a license must be photographed and fingerprinted and must, in addi-

tion, supply to the Onslow County Sheriff's Department certain personal data "to assist in an investigation of his criminal record and character." The foregoing requirements must be met by all persons owning any interest if the applicant is a partnership or association, and by each shareholder owning ten percent or more of the common stock if the applicant is a corporation. The application will be denied if any person required to be investigated has been convicted of a felony or of a crime involving prostitution or related offense within the preceding five years, and a like conviction thereafter constitutes grounds for immediate revocation of an issued license.

Furthermore, every employee of a companionship business must be registered by name and address with the Sheriff's department and be fingerprinted and photographed. A licensee may not knowingly hire a new employee who has been convicted of a felony within three years or of prostitution, assignation, or a related offense within two years, or is a felon whose citizenship has not been restored. Nor may a licensee continue to employ an existing employee who is convicted of like offenses after the effective date of the ordinance. Noncompliance with these provisions is grounds for revocation of the license.

A $25.00 fine is imposed for each license. An additional $25.00 "nonrefundable administrative fee" is charged for each applicant and employee who is required to be fingerprinted and photographed. Licensees must keep, available for inspection by "any law enforcement officer," a permanent legible record of every transaction with a client or customer showing the date of the transaction, the patron's name, address, date of birth, general physical description (including hair color, height and weight), the amount of money involved, and two forms of positive identification or one government-issued photo identification. A full and accurate copy of these records must also be filed with the Sheriff's department "within forty-eight hours of the transaction." A licensee or employee may not "have any male or female companionship business transactions" with any person who is under the age of eighteen.

Finally, by express provision, massage parlors and massage-related businesses are exempt from the ordinance because such operations are subject to another county ordinance. The ordi-

nance further states that it "is not intended to apply to persons performing babysitting or to persons engaged in housekeeping or related services." Violation of any provision of the ordinance constitutes a misdemeanor punishable by fine or imprisonment in addition to providing grounds for license revocation.

### B. Factual and Procedural History

The ordinance was to have become effective 1 August 1985. On 20 June 1985 Treants filed a complaint challenging the validity of the ordinance and seeking declaratory and injunctive relief. Hearings were held at the 9 September and 28 October 1985 sessions of Onslow County Civil Superior Court.

Testimony presented by Defendants tended to show the following facts: In Onslow County there are in operation six or seven businesses known as "Movie Mates." In these businesses, a patron may, for a fee, have another person watch a movie or video tape with him in a private room. The testimony of Captain Kenneth Cooper supported the Court's findings that prostitution and crimes against nature have been practiced in some of these businesses and that controlled substances have been used by some patrons in Movie Mates establishments. Because of instructions for detecting undercover officers given Movie Mates employees by their employers, Onslow County law enforcement officials have been unsuccessful in preventing these practices.

The evidence further showed that since the 17 July 1978 enactment of the "Onslow County Ordinance Regulating Massage Parlors," there have been no massage parlors operating in the county. Finally, evidence was presented that the Movie Mates establishments are "off limits" to military personnel stationed at Camp Lejeune Marine Base in Onslow County.

Treants presented no evidence at the hearings. Based upon Defendants' evidence, arguments of counsel, and briefs submitted by the parties, the trial court made numerous findings of fact, concluding that the ordinance is contrary to the federal and state constitutions.

## II

### A. *Standing*: Treants

[1]  At the outset, Defendants contend that Treants lacks standing to challenge the ordinance. The Defendants initially raised the standing issue by motions filed 14 August and 10 October 1985 pursuant to Rules 12(b)(6) and 12(f) of the North Carolina Rules of Civil Procedure, and resubmitted the issue in a memorandum of law on 18 September 1985. However, the case below was heard primarily upon the facial validity of the ordinance. The standing question was not argued, and the trial court never ruled on the motions. At the 28 October hearing, counsel for Defendants requested that if the court entered a preliminary injunction, that the court also enter a permanent injunction. Counsel for Treants consented to this procedure. Arguably, Defendants thus abandoned their motions in the court below. In any event, we hold that Treants has standing to litigate this cause.

Standing exists in the state courts of North Carolina whenever the validity of state or local legislative action is challenged by a plaintiff who "is directly and adversely affected thereby," *Taylor v. City of Raleigh*, 290 N.C. 608, 620, 227 S.E. 2d 576, 583 (1976), or who "is in immediate danger of sustaining a direct injury" from an ordinance's enforcement. *Nicholson v. Education Assistance Authority*, 275 N.C. 439, 447, 168 S.E. 2d 401, 406 (1969).

Treants has alleged that it operates business establishments providing a service whereby for a fee a patron may have a person watch a movie with them. Furthermore, Defendants have admitted in their Answer that, in their opinion, the ordinance would apply to "Movie Mates" businesses. Unquestionably, the purpose of the drafters was to severely regulate the very type of business establishments operated by Treants; the ordinance's enforcement would directly and adversely affect Treants' business; and Treants thus has a substantial personal stake in having it declared invalid.

### B. *Standing*: Employees and Patrons

[2]  Defendants have also responded to an allegation in Treants' Complaint that the ordinance "impermissibly invades the privacy of the plaintiff's employees and customers" by challenging

Treants' standing to assert the privacy rights of its patrons. Although both state and federal courts ordinarily prohibit the vicarious assertion of the constitutional rights of third parties, the United States Supreme Court has recognized an exception when "individuals not parties to a particular suit stand to lose by its outcome and yet have no effective avenue of preserving their rights themselves." *Broadrick v. Oklahoma,* 413 U.S. 601, 611, 37 L.Ed. 2d 830, 839, 93 S.Ct. 2908, 2915 (1973). *See also Eisenstadt v. Baird,* 405 U.S. 438, 31 L.Ed. 2d 349, 92 S.Ct. 1029 (1972); *NAACP v. Alabama,* 357 U.S. 449, 2 L.Ed. 2d 1488, 78 S.Ct. 1163 (1958). This exception is applicable in this case. Neither employees nor would-be patrons are themselves subject to prosecution for failure to comply with the ordinance although their access to employment or to the services provided by the targeted businesses is restricted to the extent they, for privacy reasons, refuse to disclose the required information. To that extent they are denied a forum for assertion of their own rights. *See Eisenstadt.* The regulation's very existence may thus cause others not before the court to refrain from constitutionally protected activities. *See IDK, Inc. v. Clark County,* 599 F. Supp. 1402 (1984). Hence, we conclude that the issue of privacy rights of patrons and employees is properly before the Court.

### III

#### *Due Process*

[3]   Among the conclusions of the trial judge were: (1) the ordinance "lacks a rational basis and affect[s] [sic] the fundamental rights of persons to engage in legitimate businesses," (2) the ordinance "unreasonably burdens the right of persons to engage in legitimate businesses," (e) "a large number of people would be affected by the ordinance whose companionship services are necessary, desirable, and unquestionably moral," and (4) the ordinance "imposes unreasonable burdens on the foregoing businesses." Treants contends: (2) that the ordinance infringes upon the fundamental constitutional rights of privacy and freedom of association and must therefore be strictly scrutinized in the context of the Fourteenth Amendment to the United States Constitution as well as Article I, Sections 19 and 35 of the North Carolina Constitution, and (2) that the ordinance lacks a rational basis. On the other hand, Defendants maintain, in part, that: (1) there is no

"fundamental" constitutionally guaranteed right to engage in a legitimate business, (2) Neither the constitutional right to privacy nor the First Amendment right of association is implicated in this controversy, (3) the ordinance is therefore not subject to strict scrutiny, and (4) there exist several rational basis for the ordinance.

## A

Initially, we summarize and distinguish the frameworks for substantive due process analysis under the federal and state constitutions. Federal courts, in interpreting the "Due Process" clause of the Fourteenth Amendment, measure the validity of legislative enactments by employing two distinct tests or levels of scrutiny. The United States Supreme Court has repeatedly stated that substantive Due Process will no longer be used to invalidate state *economic* legislation. *See, e.g., Ferguson v. Skrupa*, 372 U.S. 726, 10 L.Ed. 2d 93, 83 S.Ct. 1028 (1963). Unless legislation involves a suspect classification or impinges upon fundamental personal rights, it is presumed constitutional and need only be rationally related to a legitimate state interest. *See, e.g. New Orleans v. Dukes*, 427 U.S. 297, 49 L.Ed. 2d 511, 96 S.Ct. 2513 (1976) (per curiam); *Pollard v. Cockrell*, 578 F. 2d 1002 (5th Cir. 1978); *Kennedy v. Hughes*, 596 F. Supp. 1487 (1984). This minimal rationality standard of review is satisfied if an ordinance or statute has any conceivable rational basis. *Id.* On the other hand, a law which burdens certain explicit or implied "fundamental" rights must be strictly scrutinized. It may be justified only by a "compelling state interest," and must be narrowly drawn to express only the legitimate interests at stake. *E.g., Roe v. Wade*, 410 U.S. 113, 35 L.Ed. 2d 147, 93 S.Ct. 705 (1973); *Shapiro v. Thompson*, 394 U.S. 618, 22 L.Ed. 2d 600, 89 S.Ct. 1322 (1969); *Griswold v. Connecticut*, 381 U.S. 479, 14 L.Ed. 2d 510, 85 S.Ct. 1678 (1965).

Article I, Section 19 of the Constitution of North Carolina provides that "[n]o person shall be . . . deprived of his life, liberty, or property, but by the law of the land." Although the "law of the land" is sometimes considered synonymous with Fourteenth Amendment "due process of law," *e.g., A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 258 S.E. 2d 444 (1979), our state Supreme Court has reserved the right to grant relief against unreasonable, arbitrary, or capricious legislation under our state constitution in

circumstances under which no relief might be granted by federal court interpretations of due process. *See Lowe v. Tarble*, 313 N.C. 460, 329 S.E. 2d 648 (1985); *Bulova Watch Co. v. Brand Distributors of North Wilkesboro, Inc.*, 285 N.C. 467, 206 S.E. 2d 141 (1974). A single standard has traditionally determined whether legislation constitutes an improper exercise of the police power so as to violate the "law of the land" clause: the law must have a rational, real and substantial relation to a valid governmental objective (i.e., the protection of the public health, morals, order, safety, or general welfare). *In re Aston Park Hospital*, 282 N.C. 542, 193 S.E. 2d 729 (1973); *see also State v. Joyner*, 286 N.C. 366, 211 S.E. 2d 320, *appeal dismissed*, 422 U.S. 1002, 45 L.Ed. 2d 666, 95 S.Ct. 2618 (1975). The inquiry is thus two-fold: (1) Does the regulation have a legitimate objective? and (2) If so, are the means chosen to implement that objective reasonable? *See A-S-P Associates v. Raleigh.*

### B

Treants may be correct in its contention that the "companionship" ordinance burdens fundamental rights of association and privacy protected by the federal constitution so as to demand a heightened level of scrutiny. *See Wilson v. Taylor*, 733 F. 2d 1539 (11th Cir. 1984) (First Amendment freedom of association extends to purely social and personal associations); *Whalen v. Roe*, 429 U.S. 589, 51 L.Ed. 2d 64, 97 S.Ct. 869 (1977) (extensive records of personal data implicitly threaten privacy). *But see IDK, Inc. v. Clark County* (right of association does not extend to purely commercial relationships); *People v. Katrinak*, 136 Cal. App. 3d 145, 185 Cal. Rptr. 869 (1982) (same—privacy). On the other hand, the Supreme Court's reluctance to invalidate economic legislation suggests that the right to engage in legitimate business is not "fundamental" for purposes of federal due process analysis. *See Harper v. Lindsay*, 616 F. 2d 849 (5th Cir. 1980); *but see Corey v. City of Dallas*, 352 F. Supp. 977 (N.D. Tex. 1972), *rev'd on other grounds* 492 F. 2d 496 (5th Cir. 1974). We need not decide either of these questions. Indeed, for many of the reasons discussed hereafter, it is our opinion that the challenged ordinance must fail even the minimal rationality test applicable to regulations that involve no fundamental rights. Nevertheless, we base our decision to affirm the order permanently enjoining its enforcement upon state constitutional grounds.

## C

The critical fatal flaw in the ordinance is that, on its face, it purports to regulate, not merely Movie Mates businesses, but every business that provides "companionship." Apparently, a great deal of discussion occurred in the court below regarding the intended scope of the ordinance, and the meaning of the provision that "it is not intended to apply to persons performing babysitting or to persons engaged in housekeeping or related services." Although this section may have successfully exempted babysitters and housekeepers,[1] the plain and ordinary meaning of "companionship" obviously encompasses any number of other lawful, necessary, and unquestionably moral activities (including nursing and rest homes, legitimate dating and escort services, companions for the elderly, support groups, etc.) and to that extent the ordinance is not rationally related to any legitimate governmental objective. Insofar as the phrase "other related services" was intended to exclude all of these legitimate occupations, we conclude that the ordinance is impermissibly vague in that people of common intelligence must necessarily guess at its meaning and differ as to whether "other related services" applies to a particular activity, *see State v. Vestal*, 281 N.C. 517, 189 S.E. 2d 152 (1972), and further, that it encourages arbitrary and discriminatory enforcement by imposing an inappropriate degree of discretion upon governmental officials charged with its enforcement.

Clearly, state or local governments may lawfully regulate commercial enterprises in the public interest. However, this regulation must be based upon some distinguishing feature in the business itself or exist because the probable consequence of the manner in which the business is ordinarily conducted is substantial injury to the public health, safety, morals, or welfare. *State v. Harris*, 216 N.C. 746, 758-59, 6 S.E. 2d 854, 863 (1940). *See also Cheek v. City of Charlotte*, 273 N.C. 293, 160 S.E. 2d 18 (1968). Defendants hurt their own cause by contending that the ordinance regulates only businesses providing "pure companionship" or "companionship for companionship's sake" and not businesses

---

1. Because the mere provision of "companionship" is the distinguishing feature upon which businesses are regulated, the ordinance, by virtue of these exemptions, *may* discriminate unlawfully against persons and establishments of the same kind in violation of the state and federal constitutions' "equal protection" provisions. *See Cheek v. City of Charlotte*, 273 N.C. 293, 160 S.E. 2d 18 (1968).

which provide services to which companionship is merely incidental. We agree with Treants that the right to "companionship" or the formation of social associations is inherent in the concept of individual "freedom" protected by our state charter. Moreover, there are many citizens to whom companionship must necessarily come by way of a business arrangement, and the mere existence of a commercial context does not automatically remove all constitutional safeguards from an otherwise protected association. Hence, "companionship" is an inappropriate "distinguishing feature" upon which to base regulation.

It has become axiomatic that "[a] State cannot under the guise of protecting the public arbitrarily interfere with private businesses or prohibit lawful occupations or impose unreasonable and unnecessary restrictions on them." *Hartford Accident & Indemnity Co. v. Ingram, Com'r of Insurance*, 290 N.C. 457, 471, 226 S.E. 2d 498, 507 (1976); *Roller v. Allen*, 245 N.C. 516, 525, 96 S.E. 2d 851, 859 (1957). *See also In re Aston Park Hospital*, 282 N.C. at 550-51, 193 S.E. 2d at 735. Article I, Section 1 of our state constitution declares that among the inalienable rights of the people are life, liberty, the *enjoyment of the fruits of their own labor*, and the pursuit of happiness. This provision creates a right to conduct a lawful business or to earn a livelihood that is "fundamental" for purposes of state constitutional analysis. *See Roller v. Allen* at 518-19, 96 S.E. 2d at 854; *McCormick v. Proctor*, 217 N.C. 23, 6 S.E. 2d 870 (1940) (Stacy, J., concurring). Traditionally our courts, when assessing the propriety of legislation regulating trades and businesses, have distinguished those occupations which require special knowledge and skill or threaten particular harm from ordinary, harmless occupations for which burdensome regulations are inappropriate, *see State v. Ballance*, 229 N.C. 764, 51 S.E. 2d 731 (1949); *State v. Harris; Cheek v. City of Charlotte*, and have not hesitated to strike down regulatory legislation as repugnant to the state constitution when it is irrational and arbitrary. *See, e.g., Roller v. Allen* (tile contractors); *State v. Ballance* (photography); *State v. Harris* (dry cleaning). *See also In re Aston Park Hospital; Real Estate Licensing Board v. Aikens*, 31 N.C. App. 8, 228 S.E. 2d 493 (1976).

Defendants assert the following "rational bases" as particular support for the ordinance's record-keeping requirements: (1) preventing minors from visiting companionship businesses, (2) in-

hibiting patrons from soliciting proscribed sexual acts, (3) preventing U.S. Marine Corps personnel from frequenting establishments which are off-limits to them, (4) inhibiting the spread of the AIDS virus in a commercial setting, and (5) controlling excessive sums of money which are collected at certain companionship businesses. From the evidence presented to the trial court and the arguments made there by the Defendants, it is clear that the county's primary goal, in addition to these enumerated purposes for the ordinance, was to discourage the practice of prostitution in Movie Mates establishments.

The prevention or hindrance of organized prostitution in the guise of Movie Mates is unquestionably a valid objective of local government. In Onslow County, prostitution, which was traditionally associated with massage parlors, has apparently in recent years become associated with Movie Mates due to the strict regulation of massage parlors. Because of this association, it may be that Movie Mates are particularly suited, like massage parlors, to strict regulation under the local police power. *See IDK, Inc. v. Clark County; Cheek v. City of Charlotte.* However, while regulation of businesses known to be associated with prostitution may reasonably be expected to deter that activity, the breadth of the "companionship" ordinance goes far beyond what is necessary to accomplish that objective. For example, the administrative and license fees, photographing, fingerprinting, and detailed record-keeping requirements place onerous burdens upon legitimate businesses. A person who provides companionship to elderly or sick people must presumably limit their services to licensed premises, and a patron could not hire an escort to accompany him to a public but unlicensed place. The denial or burdening of innocent persons' rights to practice lawful occupations because some other businesses which provide companionship are a subterfuge for illegal activity is capricious and irrational.

In the same vein, we reject the Defendants' five stated purposes for the ordinance. First, we summarily conclude that Onslow County has no legitimate interest in assisting the enforcement of regulations of the United States Marine Corps regarding establishments off-limits to its personnel. Second, assuming without deciding that the county's police power extends to prevention of minors from frequenting Movie Mates or other businesses where prostitution is known to occur, *see Pollard v. Cockrell,* 578

F. 2d at 1015, Onslow County nevertheless has no legitimate governmental interest in prohibiting minors from enjoying the company of a hired companion in other innocent contexts. Third, although the county's interest in preventing prostitution may reasonably include discouraging business patrons from soliciting sex acts, the placing of extraordinary burdens upon lawful and necessary businesses which have not been demonstrated to have any connection to that activity does not rationally further that interest. Fourth, though the police power extends to any reasonable health measure calculated to inhibit the spread of AIDS, the challenged ordinance is not rationally related to that objective. Evidence presented by Defendants that acts of sodomy (associated with the spread of AIDS) occur in Movie Mates businesses does not justify imposition of restrictions upon businesses which do not provide companionship in a context likely to result in sexual conduct. Finally, Defendants' evidence that "excessive" sums of money are collected at certain Movie Mates establishments likewise does not justify regulation of other businesses. We recognize that there is nothing "peculiarly sacrosanct" about the price a person charges for what he sells and that when the economic welfare of the public so requires, government may regulate prices charged by businesses. *Bulova Watch Co. v. Brand Distributors of North Wilkesboro, Inc.*, 285 N.C. at 478, 206 S.E. 2d at 149. However, this ordinance is not reasonably designed to control the price of services rendered by companionship businesses. It does not establish maximum prices nor provide any other standard by which a law enforcement official might determine whether the amounts of money spent there are "excessive."

Defendants rely heavily upon the general rule that legislation is presumed constitutional and that the burden is upon the complaining party to show its invalidity, *see e.g., Currituck County v. Wiley*, 46 N.C. App. 835, 266 S.E. 2d 52, *cert. denied*, 301 N.C. 234, 283 S.E. 2d 131 (1980), and argue that Treants failed to meet that burden by failing to present any evidence. The burden of proving a negative which defendants would place upon Treants (i.e., the nonexistence of any conceivable basis for the ordinance) would be insurmountable. We thus conclude that Treants has met any burden it has by presenting arguments which aptly demonstrate the facial invalidity of the ordinance. As our Supreme Court stated in *State v. Harris*,

In this situation there does not seem to be much room for a discussion as to the rules under which the Court approaches its duty of applying the constitutional test to this act of the [county]. Any presumptions or burdens which may exist are satisfied when the facts are laid bare to the Court and the situation is found to be wanting in those conditions and those circumstances upon which alone the power of the [county] in its exercise of the police power must depend.

*Id.* at 764, 6 S.E. 2d at 866.

For the foregoing reasons, we conclude that the ordinance lacks any rational, real and substantial relation to any valid objective of Onslow County and that it thus offends Article I, Secs. 1 and 19 of the Constitution of North Carolina.

### IV

*Severability*

[4] The ordinance contains a severability clause which provides that a court's holding that any provision of the regulation is invalid or unconstitutional shall not affect the validity of any other provision. However, the purpose and effect of the ordinance is to impose onerous licensing requirements on all businesses which provide "companionship." All parts of the ordinance are related to that unconstitutional purpose and there are no provisions which may validly be given effect. Thus the entire ordinance must fall, and we need not rule upon the hypothetical validity of similar provisions in a more narrowly drawn ordinance.

### V

[5] Nevertheless, for the sake of thoroughness, we do address specifically the ordinance's record-keeping provisions inasmuch as Treants' contention that these provisions violate constitutional rights of privacy constitutes a primary ground for its attack on the ordinance and raises an immensely important issue. Defendants inappropriately cite as authority for the validity of these sections *Pollard v. Cockrell*, 578 F. 2d 1002 (5th Cir. 1978) which in turn relies upon *Whalen v. Roe*, 429 U.S. 589, 51 L.Ed. 2d 64, 97 S.Ct. 869 (1977). *Pollard* involved an ordinance regulating massage parlors whose record-keeping provisions required only that the name, address, and age of patrons be recorded and kept for one

year beyond the permit year. Likewise, *Whalen v. Roe*, involving a New York statute aimed at controlling the illegal availability of prescription drugs, required that records of certain prescriptions containing patient's name, address, and age, physician's name, and pharmacy, be kept for five years and then destroyed. In contrast, the Onslow County ordinance mandates a *permanent* record and requires the inclusion of more extensive personal data regarding patrons of companionship businesses.

In *Whalen v. Roe*, the United States Supreme Court said:

> We are not unaware of the threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive government files. The collection of taxes, the distribution of welfare and social security benefits, the supervision of public health, the direction of our Armed Forces, and the enforcement of the criminal laws all require the orderly preservation of great quantities of information, much of which is personal in character and potentially embarrassing or harmful if disclosed. *The right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures.* Recognizing that in some circumstances that duty arguably has its roots in the Constitution, nevertheless New York's statutory scheme, and its implementing administration procedures, evidence a proper concern with, and protection of, the individual's interest in privacy. We therefore need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumulated private data—whether intentional or unintentional—*or by a system that did not contain comparable security provisions.* (Emphasis added.)

429 U.S. at 605, 51 L.Ed. 2d at 77, 97 S.Ct. at 879.

The New York prescription records were secured in a vault protected by a wire fence and alarm system; a limited number of people had access to the records; and the statute expressly prohibited public disclosure of the information. The Onslow County ordinance contains no comparable security provisions and grants authority to *any* law enforcement officer to inspect the records.

The ordinance's records requirement implicates a valid individual interest in avoiding disclosure of personal matters. Based upon the extensiveness of the data to be recorded, the requirement that the record be permanent, and the lack of any protections against unwarranted disclosure of limits upon the records' use, we conclude that the provision violates the right to privacy of patrons of companionship businesses under both the federal and state constitutions.

## VI

In addition to the foregoing, Treants contends: (1) that the ordinance is preempted by state law insofar as it attempts to prohibit prostitution and crimes against nature, and (2) that the administrative and license fees constitute an illegal tax not authorized by statute. Having determined that the ordinance in its entirety exceeds the authority of the County under the North Carolina Constitution, we do not reach either of these questions.

In conclusion, we acknowledge the solemn admonition of our Constitution that "[a] frequent recurrence to fundamental principles is absolutely necessary to preserve the blessings of liberty." Art. I, Sec. 35. Obedience to that directive leads us to hold that the trial court did not err in its determination that the Onslow County ordinance is unconstitutional. Therefore, we affirm the court's order permanently enjoining its enforcement.

Affirmed.

Judges WEBB and EAGLES concur.