HAZEL WHITE, BEATRICE McCOY, ARTIS CHADWICK, LINWOOD CHAD-
WICK AND MARY H. WHITE v. DOROTHY PATE, CLERK OF SUPERIOR
COURT OF CRAVEN COUNTY; S. W. McCOY, FLETCHER McCOY AND
CARLTON WARD, COMMISSIONERS OF THE CORE CREEK DRAINAGE DISTRICT

No. 511PA82

(Filed 7 July 1983)

**1. Clerks of Court § 1; Courts § 3— jurisdiction—challenge to statute involving
authority of clerk**

The General Assembly did not intend that exclusive original jurisdiction
of an action to enjoin enforcement of an unconstitutional statute be vested in
the clerk of superior court simply because the subject matter of the statute so
challenged involves the authority of the clerk. Therefore, the trial court erred
in determining that the clerk of superior court had exclusive jurisdiction of
plaintiffs' action challenging the constitutionality of the provisions of G.S.
156-81(a) and (i) giving clerks of superior court discretionary authority to ap-
point drainage commissioners in lieu of such commissioners being elected as
otherwise provided by law and in ruling that such action could not be ad-
judicated in the superior court.

**2. Rules of Civil Procedure § 19— absence of necessary parties—dismissal not
warranted**

The absence of parties who are necessary parties under G.S. 1A-1, Rule
19 does not merit a dismissal. Rather, when the absence of a necessary party
is disclosed, the trial court should refuse to deal with the merits of the action
until the necessary party is brought into the action, and any such defect
should be corrected by the trial court *ex mero motu* in the absence of a proper
motion by a competent person.

**3. Appeal and Error § 45.1— constitutionality of statute—abandonment of conten-
tions**

Appellants' contentions that the statute in question creates separate
emoluments and privileges contrary to Art. I, § 32 of the N.C. Constitution
and denies them due process in violation of Art. I, § 19 of the N.C. Constitu-
tion are deemed abandoned where appellants brought forward no reasons or
arguments concerning those two alleged defects in the statute nor cited any
authority concerning them in their brief.

**4. Appeal and Error § 3— review of constitutional questions**

The Supreme Court will not decide constitutional questions which have
not been presented in the courts below.

**5. Constitutional Law § 20— equal protection—strict scrutiny standard—rational
basis**

The upper tier of equal protection analysis requiring strict scrutiny of a
governmental classification applies only when the classification impermissibly
interferes with the exercise of a fundamental right or operates to the peculiar
disadvantage of a suspect class and requires that the government demonstrate

that the classification it has imposed is necessary to promote a compelling governmental interest. When a governmental classification does not burden the exercise of a fundamental right or operate to the peculiar disadvantage of a suspect class, the lower tier of equal protection analysis requiring that the classification be made upon a rational basis must be applied, and the governmental act is entitled to a presumption of validity.

**6. Constitutional Law § 20— equal protection—constitutionality of statute—standard to be applied**

The rational basis standard, not the strict scrutiny standard, applies in determining whether provisions of G.S. 156-81(a) and (i) giving clerks of superior court discretionary authority to appoint drainage commissioners in lieu of such commissioners being elected as otherwise provided by law constitutes a violation of equal protection as guaranteed by Art. I, § 19 of the N.C. Constitution, since the statute does not burden a "suspect class" or the exercise of the fundamental right to participate in elections on an equal basis with other citizens in the drainage district.

**7. Drainage § 4— appointment of drainage commissioners—discretion of clerk—constitutionality of statute**

Provisions of G.S. 156-81(a) and (i) giving clerks of superior court discretionary authority to appoint drainage commissioners in lieu of the election thereof bear a rational relationship to a conceivable legitimate governmental purpose and do not constitute a violation of equal protection of the laws guaranteed by Art. I, § 19 of the N.C. Constitution since the experimentation of permitting commissioners to be elected in some drainage districts and appointed in others satisfies the requirement that the classification be made upon a rational basis.

ON discretionary review of the decision of the Court of Appeals reported at 58 N.C. App. 402, 293 S.E. 2d 601 (1982) affirming the 17 June 1981 Order of Dismissal entered by *Brown, Judge,* Superior Court, CRAVEN County.

*Smith, Patterson, Follin, Curtis, James and Harkavy, by Norman B. Smith and John A. Dusenbury, Jr., for plaintiff appellant.*

*Rufus L. Edmisten, Attorney General, Millard R. Rich, Jr., Deputy Attorney General, for defendant appellee Dorothy Pate, Clerk of Superior Court of Craven County.*

*Ward and Smith, P.A., by William Joseph Austin, Jr., for defendant appellees S. W. McCoy, Fletcher McCoy and Carlton Ward, Commissioners of the Core Creek Drainage District.*

MITCHELL, Justice.

The principal question presented is whether the provisions of G.S. 156-81(a) and (i) giving Clerks of Superior Court discretionary authority to appoint drainage commissioners, in lieu of such commissioners being elected as otherwise provided by law, deny the plaintiffs the equal protection of the laws guaranteed by Article I, § 19 of the Constitution of North Carolina. We hold that they do not.

The plaintiffs are landowners in the Core Creek Drainage District [hereinafter "drainage district"]. They brought this action by the filing of a complaint in Superior Court on 27 February 1981 in which they alleged that the provisions of G.S. 156-81(a) and (i) giving the Clerk of Superior Court the discretionary authority to appoint drainage commissioners in lieu of their election by eligible voters within the drainage district denies the plaintiffs their right to vote in a manner which deprives them of the equal protection of the laws guaranteed by the Constitution of North Carolina. The plaintiffs specifically prayed for relief in the form of an injunction permanently prohibiting the defendant Pate from appointing commissioners and the other defendants from accepting appointments as commissioners for the drainage district and ordering that commissioners of the drainage district henceforth be elected and not appointed.

The plaintiffs alleged *inter alia* in their complaint that the drainage district is constituted pursuant to the requirements of Chapter 156 of the General Statutes of North Carolina and is located entirely within Craven County. The plaintiffs are residents and owners of land in the drainage district. The defendants, S. W. McCoy, Fletcher McCoy and Carlton Ward, are commissioners of the drainage district who have been appointed and reappointed to successive terms of office by the defendant, Honorable Dorothy Pate, Clerk of Superior Court of Craven County.

The drainage district consists of approximately 8,884.30 acres. This land is benefited by the public works located in the drainage district which drain the land and make it suitable for cultivation. An additional 28,852.62 acres adjoin the drainage district and are also drained, made fit for cultivation and otherwise benefited by the public works of the drainage district.

Each of the plaintiffs pays an annual assessment upon his or her land for the purpose of paying for the public works of the drainage district and providing for their maintenance and upkeep. Owners of benefited land lying beyond the boundaries of the drainage district are not required to pay any such assessments or other charges.

The sole method for enlarging the boundaries of a drainage district is by a proceeding instituted by the drainage commissioners pursuant to G.S. 156-93.3. The plaintiffs have repeatedly requested the defendant commissioners to take action to enlarge the district boundaries to include lands adjoining the drainage district which are benefited by the drainage district's public works. The defendant commissioners have failed to do so. The plaintiffs also allege that the defendant commissioners have failed to file annual reports regularly or to have those reports that they have filed audited and that such failures are contrary to law.

The plaintiffs allege that the acts or failures to act by the defendant commissioners are due at least in part to the fact that the defendant Pate has appointed and reappointed the defendant commissioners without regard to their failure to properly perform their duties. The plaintiffs allege that the appointment and reappointment of the defendant commissoners has made them unresponsive to the legitimate needs of the landowners in the drainage district and has caused and will cause the plaintiffs irreparable injury of a type not adequately compensable by money damages. They further allege that their only adequate remedy is injunctive relief permanently enjoining the appointment of commissioners of the drainage district and ordering that commissioners henceforth be elected by the qualified voters of the drainage district. In their complaint, the plaintiffs specifically pray such relief.

None of the defendants filed an answer to the complaint. Instead, each defendant filed a motion to dismiss asserting that the complaint failed to state a claim upon which relief could be granted, that exclusive original jurisdiction of the action lay with the Clerk of Superior Court, and that the complaint failed to join certain necessary parties. On 17 June 1981, the trial court dismissed the action for each of the reasons asserted by the defendants and for the further reason that the injunctive relief sought

by the plaintiffs would deprive the defendants of privileges of citizenship without due process of law. The plaintiffs appealed to the Court of Appeals which affirmed the order of the trial court dismissing the action. We allowed the plaintiffs' petition for discretionary review under G.S. 7A-31.

In reaching its decision affirming the order of the trial court dismissing the plaintiffs' action, the Court of Appeals proceeded directly to the question of the constitutionality of G.S. 156-81. Having decided that the statute was constitutional, the Court of Appeals did not reach the plaintiffs' other assignments of error. In addition to the single constitutional question involving the equal protection of the laws which was brought forward to the Court of Appeals and to this Court, we undertake to address the plaintiffs' remaining assignments of error.

[1]   The plaintiffs assign as error the trial court's determination that exclusive jurisdiction of their claim for relief rests with the Clerk of Superior Court and that their claim for relief may not be adjudicated in the Superior Court. The plaintiffs contend that jurisdiction was properly vested in the Superior Court and that the trial court erred in dismissing their claim on the ground that the Clerk of Superior Court had exclusive jurisdiction. We agree.

The powers and functions of Clerks of Superior Court with regard to drainage districts are set forth in Chapter 156 of the General Statutes of North Carolina. Some of these powers and functions are executive in nature and some are judicial. We find nothing in Chapter 156 or elsewhere, however, tending to indicate that the General Assembly intended that exclusive original jurisdiction of an action to enjoin enforcement of an unconstitutional statute be vested in the Clerk of Superior Court simply because the subject matter of the statute so challenged involves the authority of the Clerk. Quite to the contrary, the General Assembly has specifically provided that civil actions are brought properly in Superior Court when the principal relief prayed is enforcement of a claim of constitutional right or injunctive relief against the enforcement of a statute. G.S. 7A-245. The trial court erred to the extent that it based its order of dismissal upon the ground that exclusive original jurisdiction over this action was in the Clerk of Superior Court.

[2]  The plaintiffs also assign as error that portion of the order of the trial court dismissing the plaintiffs' action for failure to join necessary parties. The trial court determined that the remaining landowners in the drainage district and the Board of Drainage Commissioners as an entity were necessary parties to the plaintiffs' action. The trial court specifically made the failure to join these parties a ground for its order of dismissal. The plaintiffs contend that this was error by the trial court. We agree.

The absence of parties who are necessary parties under Rule 19 of the Rules of Civil Procedure does not merit a dismissal. *Booker v. Everhart*, 294 N.C. 146, 240 S.E. 2d 360 (1978). *Cf. Carding Developments v. Gunter & Cooke*, 12 N.C. App. 448, 183 S.E. 2d 834 (1971) (dismissal under Rule 41 for failure to comply with a court order to join necessary parties). When the absence of a necessary party[1] is disclosed, the trial court should refuse to deal with the merits of the action until the necessary party is brought into the action. Any such defect should be corrected by the trial court *ex mero motu* in the absence of a proper motion by a competent person. *Booker v. Everhart*, 294 N.C. at 158, 240 S.E. 2d at 367. Therefore, the trial court erred to the extent that it based the order of dismissal upon the ground that necessary parties had not been made parties to the action.

[3]  By their complaint, the plaintiffs also alleged that the statute under review creates separate emoluments and privileges contrary to Article I, § 32 of the Constitution of North Carolina. They further alleged in their complaint that the statute denies them the due process of law embodied in the term "law of the land" as used in Article I, § 19 of the Constitution of North Carolina. The plaintiffs have brought forward no reasons or arguments concerning these two alleged defects in the statute nor cited any authority concerning them in their brief before this

---

1. Our determination in this opinion concerning the sole constitutional issue brought forward by the plaintiffs makes it unnecessary for us to determine whether the remaining landowners in the drainage district and the Board of Drainage Commissioners were necessary or proper parties. Likewise, the manner in which we have addressed the constitutional challenge to the statute, makes it unnecessary for us to determine whether this was an action challenging the constitutionality of a statute brought under the Declaratory Judgment Act, G.S. 1-253 *et seq.* requiring that the Attorney General be served and given an opportunity to be heard in the trial court. *See e.g.* G.S. 1-260.

Court. Therefore, any contentions by the plaintiffs that the statute under challenge violates these specific constitutional provisions are deemed abandoned and will not be reached or discussed by this Court. *Williams v. Williams*, 299 N.C. 174, 261 S.E. 2d 849 (1980); *Sykes v. Clayton*, 274 N.C. 398, 163 S.E. 2d 775 (1968).

[4] Additionally, the plaintiffs contend for the first time in their brief before this Court that G.S. 156-81 denies them equal protection of the laws in violation of the Constitution of the United States. The plaintiffs did not attempt in any way to present this question in the Court of Appeals[2] or in the trial court. This Court will not decide questions which have not been presented in the courts below, and this is especially true with regard to questions concerning the constitutionality of a statute. *See Plemmer v. Matthewson*, 281 N.C. 722, 190 S.E. 2d 204 (1972); *Lane v. Insurance Co.*, 258 N.C. 318, 128 S.E. 2d 398 (1962). For this reason we neither reach nor decide this question arising under the Constitution of the United States which the plaintiffs attempt to raise for the first time here.

The single question presented, preserved and brought forward for our review under this assignment of error is whether G.S. 156-81(a) and (i) deny the plaintiffs the opportunity to vote for commissioners of the drainage district in a manner which denies them the equal protection of the laws guaranteed by Article I, § 19 of the Constitution of North Carolina. We hold that they do not.

The decisions of the Supreme Court of the United States concerning the construction and effect of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States are, of course, authoritative and binding upon this Court. *Watch Co. v. Brand Distributors*, 285 N.C. 467, 474, 206 S.E. 2d 141, 146 (1974). It is also true that the Equal Protection Clause of Article I, § 19 of the Constitution of North Carolina is functionally equivalent to the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. *Kresge Co.*

---

2. The Court of Appeals held that G.S. 156-81(a) and (i) "do not violate plaintiffs' equal protection rights under the United States and North Carolina Consitutions." 58 N.C. App. at 404, 293 S.E. 2d at 602. The federal question was not presented in the trial court or in the Court of Appeals and should not have been passed upon. *Lane v. Insurance Co.*, 258 N.C. 318, 128 S.E. 2d 398 (1962).

*v. Davis*, 277 N.C. 654, 660, 178 S.E. 2d 382, 385 (1971). "However, in the construction of the provision of the State Constitution, the meaning given by the Supreme Court of the United States to even an identical term in the Constitution of the United States is, though highly persuasive, not binding upon this Court." *Watch Co. v. Brand Distributors*, 285 N.C. at 474, 206 S.E. 2d at 146; *see Missouri v. Hunter*, --- U.S. ---, 74 L.Ed. 2d 535, 103 S.Ct. 673 (1983). In addressing the question of whether the statute under attack here violates the Equal Protection Clause of the Constitution of North Carolina, we undertake to review prior decisions of the Supreme Court of the United States and lower Federal Courts as well as the prior decisions of this Court. We emphasize, however, that our decision and holding are based upon our interpretation of the Equal Protection Clause of Article I, § 19 of the Constitution of North Carolina, upon which the plaintiffs specifically relied in the trial court and the Court of Appeals.

[5] Courts traditionally have employed a two-tiered scheme of analysis when evaluating equal protection claims. *Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 269 S.E. 2d 142 (1980); *see generally* L. Tribe, American Constitutional Law §§ 16-2, 16-6 (1978). The upper tier of equal protection analysis requiring strict scrutiny of a governmental classification applies only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 49 L.Ed. 2d 520, 524, 96 S.Ct. 2562, 2566 (1976); *San Antonio School District v. Rodriguez*, 411 U.S. 1, 16, 36 L.Ed. 2d 16, 33, 93 S.Ct. 1278, 1288 (1973). The "strict scrutiny" standard requires that the government demonstrate that the classification it has imposed is necessary to promote a compelling governmental interest. *Texfi Industries v. City of Fayetteville*, 301 N.C. at 11, 269 S.E. 2d at 149.

When a governmental classification does not burden the exercise of a fundamental right or operate to the peculiar disadvantage of a suspect class, the lower tier of equal protection analysis requiring that the classification be made upon a rational basis must be applied. *Vance v. Bradley*, 440 U.S. 93, 59 L.Ed. 2d 171, 99 S.Ct. 939 (1979); *Texfi Industries v. City of Fayetteville*, 301 N.C. at 11, 269 S.E. 2d at 149. The "rational basis" standard merely requires that the governmental classification bear some

rational relationship to a conceivable legitimate interest of government. Additionally, in instances in which it is appropriate to apply the rational basis standard, the governmental act is entitled to a presumption of validity. *Vance v. Bradley*, 440 U.S. at 97, 59 L.Ed. 2d at 176, 99 S.Ct. at 942-43.

[6]    Bearing these principles in mind, we turn to a consideration of the appropriate standard of review to be applied to the statute under attack in the present case. In so doing, we first consider whether G.S. 156-81(a) and (i) place a burden upon a "suspect class." The allegations and contentions of the plaintiffs make it clear that the class involved is comprised of all of the landowners in drainage districts in which commissioners are appointed, since all of them are denied the right to vote for commissioners by a Clerk of Court's exercise of the authority under the statute to appoint commissioners in lieu of their being elected. The only discrimination the plaintiffs allege is that landowners in this drainage district are not allowed to elect their commissioners while landowners in drainage districts in some but not all other counties are permitted to elect such commissioners. Such allegations and contentions do not present the indicia necessary to show that the statute places a burden upon a suspect class.

In *McGowan v. Maryland*, 366 U.S. 420, 6 L.Ed. 2d 393, 81 S.Ct. 1101 (1961), Maryland's Sunday Closing Laws were held constitutional. One of the grounds of attack on those laws was that they permitted retailers in one county to sell certain goods on Sunday but forbade retailers in other counties from doing the same. In rejecting the argument that such laws denied equal protection, the Court applied the rational basis standard and Mr. Chief Justice Warren pointed out for the Court that: "[W]e have held that the Equal Protection Clause relates to equality between persons as such, rather than between areas and that territorial uniformity is not a constitutional prerequisite." 366 U.S. at 427, 6 L.Ed. 2d at 400, 81 S.Ct. at 1106.

The class which the plaintiffs allege is discriminated against by the statute is a large, diverse and amorphous class unified only by the common factor of residence in counties in which the Clerk of Court has appointed commissioners of drainage districts rather than their being elected. We believe that, in the words of the Supreme Court of the United States, the present case presents a situation in which:

The system of alleged discrimination and the class it defines have none of the traditional indicia of suspectness: the class is not saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.

*San Antonio School District v. Rodriguez*, 411 U.S. at 28, 36 L.Ed. 2d at 40, 93 S.Ct. at 1294. Therefore, we conclude that the plaintiffs have not shown that G.S. 156-81(a) and (i) burden any suspect class.

We must next consider whether the challenged portions of the statute burden the exercise of a fundamental right. We hold that they do not.

We have previously stated that "the right to vote has been identified as a fundamental right . . . ." *Texfi Industries v. City of Fayetteville*, 301 N.C. at 12, 269 S.E. 2d at 149. Nothing in our prior decisions, however, should be taken as indicating that the right to vote, per se, is constitutionally protected. The Supreme Court of the United States has recently stated:

[T]his Court has often noted that the Constitution "does not confer the right of suffrage upon any one," *Minor v. Happersett*, 21 Wall 162, 178, 22 L.Ed. 627 (1875), and that "the right to vote, per se, is not a constitutionally protected right," *San Antonio School District v. Rodriguez*, 411 U.S. 1, 35 n. 78, 36 L.Ed. 2d 16, 93 S.Ct. 1278 (1973). See *McPherson v. Blacker*, 146 U.S. 1, 38-39, 36 L.Ed. 869, 13 S.Ct. 3 (1892). Moreover, we have previously rejected claims that the Constitution compels a fixed method of choosing state or local officers or representatives.

*Rivera-Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 9, 72 L.Ed. 2d 628, 635, 102 S.Ct. 2194, 2199 (1982).

The fundamental right protected by the Constitution of the United States is the "equal right to vote" and not the right to vote per se. *Dunn v. Blumstein*, 405 U.S. 330, 336, 31 L.Ed. 2d 274, 280-81, 92 S.Ct. 995, 1000 (1972). Specifically, "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. at 336, 31 L.Ed. 2d at 280, 92 S.Ct. at 1000,

White v. Pate

*quoted with approval in Rivera-Rodriguez v. Popular Democratic Party,* 457 U.S. 1, 10, 72 L.Ed. 2d 628, 635-36, 102 S.Ct. 2194, 2200 (1982). We conclude that Article I, § 19 of the Constitution of North Carolina guarantees the "equal right to vote" guaranteed by the Constitution of the United States.

Clearly, the statute does not burden the right of the plaintiffs to participate in elections on an equal basis with other citizens in the drainage district, which is the "jurisdiction" in which the defendant commissioners are chosen. This is so because the exercise by the Clerk of Superior Court of Craven County of the unfettered discretion[3] given her by the statute to appoint the commissioners applies equally to all citizens in the drainage district and denies all of them the opportunity to vote for commissioners of their choice. Therefore, the fundamental "equal right to vote" is not burdened by the statute.

[7] Since the statute burdens neither a fundamental right nor a suspect class, we do not apply the strict scrutiny standard in determining its constitutionality. Instead, we must apply the rational basis standard and determine whether G.S. 156-81(a) and (i) bear a rational relationship to a conceivable legitimate governmental purpose. We hold that they do.

In *Sailors v. Board of Education* the Supreme Court noted that the science of government is "the science of experiment" and held that: "At least as respects nonlegislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done here." 387 U.S. 105, 111, 18 L.Ed. 2d 650, 655, 87 S.Ct. 1549, 1553 (1967). In *Sailors,* the need to experiment seems to have been the only basis relied upon to satisfy the "rational basis" standard.

---

3. As we have previously pointed out, the plaintiffs have not presented a due process argument before this Court, and we do not reach the question of whether the statute denies due process of law. Similarly, we do not reach or decide the question of whether the unfettered discretion granted Clerks of Court by G.S. 156-81(a) and (i) to decide whether there will be elections involves a delegation of legislative power without providing adequate standards for its exercise in violation of Article II, § 1 of the Constitution of North Carolina. Although we have previously held that conferring the power to establish a drainage district upon the Clerk of Superior Court is not an invalid delegation of legislative power, *Sanderlin v. Luken,* 152 N.C. 738, 68 S.E. 225 (1910), we have never been called upon to decide whether an act granting the Clerk the unfettered discretion to determine whether there will be elections is an invalid delegation of such power.

Although the General Assembly in enacting G.S. 156-81 did not specifically mandate that certain named counties would choose commissioners of drainage districts by elections and others would do so by appointment,[4] they consciously provided a system whereby such experimentation could be conducted and thereby achieved the same result. Such experimentation, in and of itself, satisfies the "rational basis" standard and requires the rejection of the plaintiffs' assignment and contention that the statute denies equal protection of the laws in violation of Article I, § 19 of the Constitution of North Carolina. Therefore, the trial court did not err in basing its order of dismissal upon this ground.

The plaintiffs additionally assign as error the conclusion of the Court of Appeals that the trial court was without authority to issue a mandatory injunction against the defendants in this case. As we have determined that the statute does not deny the plaintiffs equal protection of the laws as guaranteed by the Constitution of North Carolina—the sole constitutional challenge properly before this Court—it is unnecessary for us to consider whether the plaintiffs made the extraordinary showing which must be made before the enforcement of even an unconstitutional statute will be enjoined. *See generally* 7 Strong's North Carolina Index 3d, Injunctions § 5.1.

The decision of the Court of Appeals, as modified herein, is affirmed.

Modified and affirmed.

---

4. In reaching its holding that G.S. 156-81(a) and (i) are constitutional, the Court of Appeals stated by way of *obiter dictum* that: "The result would be different if the statute mandated election of commissioners in some districts and appointment in other districts, since all counties would not be treated the same." 58 N.C. App. at 404, 293 S.E. 2d at 602. That question was not before the Court of Appeals and is not before this Court. In affirming the result reached by the Court of Appeals, we do not approve its statement on this point.