392 S.E.2d 352 (1990)
326 N.C. 742
NORTHAMPTON COUNTY DRAINAGE DISTRICT NUMBER ONE, Plaintiff
v.
Larry Donald BAILEY, Jr. and wife, Maxine Spence Bailey; Betty Gatlin, Unmarried; Claude M. Fennell and wife, Brenda D. Fennell; Thomas L. Redd and wife, Connie B. Redd; Jesse B. Outlaw and wife, Dessie B. Outlaw; William Slade and wife, Kathleen Slade; James M. Bush and wife, Dorothy W. Bush; Thomas David Tann and wife, Vernear O. Tann; Jesse Lee Eason and wife, Lily M. Eason; Lucius Cornell Slade, Unmarried; Whallon Holloman and wife, Sawyer Holly Holloman; James O. Buchanan, Trustee for Farmer's Home Administration, lienholder; Joseph J. Flythe, Trustee for the Federal Land Bank of Columbia, lienholder; Thurman E. Burnette, Trustee for Farmer's Home Administration, lienholder; Joseph J. Flythe, Trustee for John M. Fields, lienholder, Defendants and
Manning P. Cooke, Agent, Robert Darrell Morris, John Southgate Vaughan, Phillip B. Parker and John D. Snipes, Jr., Intervenor-Defendants
No. 576A88.
Supreme Court of North Carolina.
June 13, 1990.
*354 Frank M. Wooten, Jr. and Browning, Sams, Poole, Hill & Hilburn by Robert R. Browning and P. Gwynett Hilburn, Greenville, for plaintiff appellee.
Baker, Jenkins & Jones, P.A. by Ronald G. Baker, Ahoskie, for defendants.
Charles J. Vaughan, Woodland, for intervenor-defendants appellants.
Geo. Thomas Davis, Jr., Swan Quarter, for Hyde County Drainage Dist. # 7.
*355 William P. Mayo, Washington, for Beaufort County Drainage Dist. Number One (Pantego Creek Drainage District), Beaufort County Drainage Dist. Number Two (Broad Creek Drainage Dist.), Beaufort County Drainage Dist. Number Five (Albemarle Drainage Dist.), and Beaufort County Pungo Drainage Dist. Number One (Pungo River Drainage Dist.), amicus curiae.
Robert B. Broughton, Gen. Counsel, and Fred Alphin, Associate Gen. Counsel, Raleigh, for North Carolina Farm Bureau Federation, Inc., amicus curiae.
Lacy H. Thornburg, Atty. Gen. by Daniel C. Oakley, Sp. Deputy Atty. Gen., and Philip A. Telfer, Asst. Atty. Gen., Raleigh, for the State of N.C., amicus curiae.
WEBB, Justice.
This appeal involves several questions regarding drainage district assessments. Chapter 156 of the General Statutes of North Carolina which was enacted in 1909 authorizes the creation of drainage districts. The constitutionality of this statute was established in Sanderlin v. Luken, 152 N.C. 738, 68 S.E. 225 (1910). We held in that case that the procedure which allowed the clerks of superior court to order the establishment of drainage districts did not constitute an unconstitutional delegation of legislative power. We also held that drainage district assessments, which are assessed for the benefit of the members of the district, are not taxes which require a vote of the people before they may be imposed. The defendants in this case raise several questions as to parts of Chapter 156.
The first question posed by this appeal is whether the defendants who are residents of Hertford County have been denied the equal protection of the laws under article I, section 19 of the Constitution of North Carolina and the fourteenth amendment to the Constitution of the United States. The defendants contend they are deprived of the equal protection of the laws because they cannot vote for the Clerk of Superior Court of Northampton County, who appoints the commissioners of the drainage district, while the owners of property in the drainage district who live in Northampton County can vote for the clerk. We agree with the defendants and reverse the Court of Appeals.
In this case we receive guidance from White v. Pate, 308 N.C. 759, 304 S.E.2d 199 (1983). In that case the plaintiffs brought an action to prevent the clerk of superior court from appointing drainage district commissioners. They alleged that because the commissioners were not elected they were deprived of the equal protection of the laws under the North Carolina Constitution by not being allowed to vote for the commissioners. The drainage district in that case was located in a single county. Justice Mitchell, writing for this Court and relying on several cases, said that in deciding an equal protection case a two tiered scheme of analysis must be made. When a classification operates to the disadvantage of a suspect class or if a classification impermissibly interferes with the exercise of a fundamental right a strict scrutiny must be given the classification. Under the strict scrutiny test the government must demonstrate that the classification it has imposed is necessary to promote a compelling governmental interest. If the classification does not interfere with a fundamental right or create a suspect class a rational basis analysis is required. If the governmental classification bears some rational relationship to a conceivable legitimate interest of government the classification does not violate the equal protection of the laws.
We held in White that the owners of land in a drainage district do not comprise a suspect class. We also held in that case that the plaintiffs were not deprived of a fundamental right by not being allowed to vote for drainage district commissioners because no one was allowed to so vote. We said, "[n]othing in our prior decisions, however, should be taken as indicating that the right to vote, per se, is constitutionally protected." White v. Pate, 308 N.C. 759, 768, 304 S.E.2d 199, 205.
*356 This case is distinguished from White in that the drainage district in this case lies in two counties. In White the drainage district was in one county. The landowners in that district who lived in the county could vote for the clerk who appointed the commissioners. In this case a part of the landowners who live in the drainage district can vote for the clerk who appoints the commissioners and a part may not. The right to vote on equal terms is a fundamental right. Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Texfi Industries v. City of Fayetteville, 301 N.C. 1, 269 S.E.2d 142 (1980). The defendants have been deprived of a fundamental right. We must use strict scrutiny in determining whether the equal protection of the laws was denied the defendants in this case.
We hold that the plaintiff has not demonstrated that the classification of voters made in this case was necessary to promote a compelling governmental interest. The interest which was to be promoted was the placing in office of drainage district commissioners. The clerk could have accomplished this by having elected commissioners which would not have deprived the defendants of the right to vote on equal terms with owners of land in the district who live in Northampton County. It was not necessary to have appointed commissioners in this case in order to promote the governmental interest.
The appellee argues that it is erroneous to equate ownership of land in the district with the right to vote. They say that owning land in either county of the district does not qualify or disqualify a person from voting for the clerk of superior court. A person may own land in the Northampton part of the district and not be allowed to vote for the clerk if he does not live in Northampton County. On the other hand a person may own land in the Hertford part of the district and vote for the clerk if he or she lives in Northampton County. We can concede this may be the case without changing the outcome of this case. The fact that there are owners of land in the Hertford County section of the district who cannot vote for the clerk while owners of land in the district who live in Northampton County can vote for the clerk establishes the constitutional infirmity of this procedure.
The defendants next contend that the unfettered discretion provided by N.C. G.S. § 156-81(a) and (i) to the clerks of superior court to determine whether drainage commissioners should be elected or appointed is an unconstitutional delegation of legislative powers. Article II, section 1 of the Constitution of North Carolina provides: "[t]he legislative power of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives." This section of the Constitution has been interpreted to mean that the General Assembly cannot delegate a portion of its legislative power to subordinate agencies or units of government without accompanying such a delegation with adequate guiding standards to govern the exercise of the delegated power. Adams v. Dept. of N.E.R., 295 N.C. 683, 249 S.E.2d 402 (1978); Watch Co. v. Brand Distributors, 285 N.C. 467, 206 S.E.2d 141 (1974); Turnpike Authority v. Pine Island, 265 N.C. 109, 143 S.E.2d 319 (1965); Williamson v. Snow, 239 N.C. 493, 80 S.E.2d 262 (1954); Coastal Highway v. Turnpike Authority, 237 N.C. 52, 74 S.E.2d 310 (1953); Efird v. Comrs. of Forsyth, 219 N.C. 96, 12 S.E.2d 889 (1941).
The plaintiff and the defendants agree that giving the clerks of superior court the power to determine whether commissioners shall be elected or appointed is a delegation of legislative power. No standard was set by the General Assembly for the making of this decision. The plaintiff, relying on Adams, says this is not an unconstitutional delegation of legislative power. It says this is so because the General Assembly has not delegated the power to set policy to the clerks. It quotes from N.C.G.S. § 156-54 which says the drainage of swamplands and surface water are the objects to be maintained and the way commissioners are chosen was considered to be inconsequential by the General Assembly to the main thrust of the drainage law. *357 The decision as to whether commissioners are to be elected or appointed should be considered, says the plaintiff, as a ministerial act.
We cannot hold that the decision as to how a governing board of a drainage district is chosen is a ministerial act. The purpose of the act to have commissioners selected can be attained without the General Assembly's relinquishment of this legislative power. We hold it is an unconstitutional delegation of legislative power.
The appellants next contend that they were denied due process of law under the law of the land clause, article I, section 19 of the Constitution of North Carolina when maintenance assessments were levied against them without notice and an opportunity to be heard. N.C.G.S. § 156-138.3 provides specifically that notice is not required before a maintenance assessment is made. The defendants concede that Breiholz v. Pocahontas County, 257 U.S. 118, 42 S.Ct. 13, 66 L.Ed. 159 (1921) holds that such notice is not required under the Constitution of the United States. We said in Watch Co. v. Distributors, 285 N.C. 467, 474, 206 S.E.2d 141, 146, "in the construction of the provision of the State Constitution, the meaning given by the Supreme Court of the United States to even an identical term in the Constitution of the United States is, though highly persuasive, not binding upon this Court." We must examine the defendants' due process claim pursuant to our State Constitution.
The defendants rely on Bowie v. West Jefferson, 231 N.C. 408, 57 S.E.2d 369 (1950) and Lexington v. Lopp, 210 N.C. 196, 185 S.E. 766 (1936). In Bowie the General Assembly had enacted a special act which allowed the Town of West Jefferson to revalue property within the town without notice to the taxpayers or an opportunity for them to be heard. We held that this statute was unconstitutional under both the State and Federal Constitutions. We said that notice and an opportunity to be heard were not necessary if the amount of tax to be imposed was simply a matter of mathematical computation but it is required where the tax is not to be calculated by a precise standard. In Lexington we affirmed a judgment of superior court which held the provisions of a city charter were unconstitutional which allowed the city to make improvements to a street and make assessments for them without notice to the landowners and an opportunity to be heard.
We hold that we are bound by Bowie and Lexington to hold that N.C.G.S. § 156-138.3 violates the law of the land clause of the Constitution of North Carolina insofar as it dispenses with notice and an opportunity to be heard before imposing maintenance assessments on landowners within the drainage district. The imposition of these assessments was not a matter of mathematical computation. It took some discretion on the part of the commissioners to determine what maintenance to provide and on this discretion depended the amount of the assessments. The landowners should have been given an opportunity to be heard.
The defendants next argue that the Court of Appeals was in error in holding the superior court did not have the authority to award attorney fees to them. We agree with the defendants and reverse the Court of Appeals on this point. N.C.G.S. § 6-21 provides in part:
Costs in the following matters shall be taxed against either party, or apportioned among the parties, in the discretion of the court:
....
(8) In all proceedings under the Chapter entitled Drainage, except as therein otherwise provided.
....
The word "costs" as the same appears and is used in this section shall be construed to include reasonable attorney's fees in such amounts as the court shall in its discretion determine and allow....
N.C.G.S. § 6-21 allows a court to award attorney fees to the defendants in this case unless it is otherwise provided in Chapter 156 of the General Statutes.
The Court of Appeals held and the plaintiff argues to this Court that N.C.G.S. *358 § 156-105 provides that assessments shall be collected in the same manner as state and county taxes and N.C.G.S. § 105-374 which provides for the foreclosure of tax liens provides in subsection (i) as follows:
The word "costs," as used in this subsection (i), shall be construed to include one reasonable attorney's fee for the plaintiff in such amount as the court shall, in its discretion, determine and allow. When a taxing unit is made a party defendant in a tax foreclosure action and files answer therein, there may be included in the costs an attorney's fee for the defendant unit in such amount as the court shall, in its discretion, determine and allow....
The plaintiff argues that this section provides only for the allowance of attorney fees to the taxing authorities and not taxpayers as part of the costs, that this section is incorporated into Chapter 156, and that the defendants are not entitled to attorney fees as a part of the costs.
Assuming that N.C.G.S. § 105-374(i) is incorporated by reference into Chapter 156, we do not believe that because the section provides for attorney fees for taxing authorities that it prohibits attorney fees being taxed as part of the costs for members of drainage districts. If we gave the statute the interpretation for which the plaintiff contends attorney fees as part of the costs would be governed entirely by N.C. G.S. § 105-374(i) and N.C.G.S. § 6-21(8) would have no meaning.
The plaintiffs also contend that the award of the attorney fees as part of the costs was arbitrary and without basis. After the judgment in superior court was entered in this case Ronald G. Baker, who represented the original defendants in the trial of this case, and Charles J. Vaughan, who represented the intervening defendants, filed affidavits supporting their motions for attorney fees. Based on these affidavits the court found that Mr. Baker had devoted approximately 75.5 hours to the case and Mr. Vaughan had devoted approximately 81.42 hours to the case. The court found that each of these attorneys had performed valuable legal services in connection with the defense of the case. The court found that in light of the complexities of the case each of the attorneys should be paid at the rate of $65.00 per hour. The court awarded $4,900 to Mr. Baker and $5,300 to Mr. Vaughan as attorney fees to be taxed as part of the costs.
It was error for the Court of Appeals to disturb this order of the superior court. The superior court considered the skill, time, and labor expended as well as the complexity of the case. The fees allowed were reasonable under the circumstances. See Hudson v. Hudson, 299 N.C. 465, 263 S.E.2d 719 (1980); Perkins v. Perkins, 85 N.C.App. 660, 355 S.E.2d 848 (1987); Self v. Self, 37 N.C.App. 199, 245 S.E.2d 541, cert. denied, 295 N.C. 648, 248 S.E.2d 253 (1978).
The appellants contend that the provision of the drainage law which allows the clerks of court to appoint drainage commissioners is unconstitutional under article I, section 8 and article V, section 2 of the Constitution of North Carolina because it allows a commission which is not elected by the people to impose taxes upon them. We held in Sanderlin v. Luken, 152 N.C. 738, 68 S.E. 225 that drainage district assessments are not taxes. We are bound by Sanderlin to overrule this assignment of error.
The superior court also held that the manner in which the drainage district commissioners held their meetings violated Article 33c of Chapter 143 of the General Statutes of North Carolina, which is known as the open meetings law. The Court of Appeals affirmed this holding but said it did not deprive the defendants of due process. No assignment of error was made in this Court as to this part of the judgment of the superior court and we do not consider it. The superior court awarded the plaintiff judgment against the defendants for certain past assessments. No assignment of error was made as to this part of the judgment and we do not consider it.
For the reasons stated in this opinion we reverse in part and affirm in part the opinion of the Court of Appeals. We remand to the Court of Appeals for remand to the *359 superior court for a judgment consistent with this opinion.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED.