JACK APGAR and wife SUSAN APGAR, WILLIAM A. LEWIS and wife CATHY COPELAND-LEWIS, MARZI BICKERT, Executor of the Estate of NANCY LEE PORTER, and the ASSOCIATED PROPERTY OWNERS OF UTAH ESTATES, INC., Plaintiffs,
v.
CURTIS C. CRAWFORD, Defendant.
No. COA09-362.
Court of Appeals of North Carolina.
Filed: March 16, 2010.
This case not for publication
James W. Kirkpatrick, III, P.A., by David F. Sutton and James W. Kirkpatrick, III, for plaintiffsappellees.
Johnston, Allison & Hord, P.A., by Daniel A. Merlin and Michael L. Wilson; Roberts & Stevens, P.A., by Marjorie R. Mann; and Adams, Hendon, Carson, Crow & Saenger, P.A., by George Ward Hendon, for defendantappellant.
Patrick U. Smathers, P.A., by Patrick U. Smathers and Jonathan J. Song, for Glenn Learn, Kathryn Learn, Stephen Adler, and Jeanne Adler, amicus curiae.
MARTIN, Chief Judge.
Utah Mountain Estates is a residential community in Haywood County, North Carolina. In 1984, defendant Curtis C. Crawford and several partners purchased 33 developed lots in Sections A, B, and C of then-existing Utah Mountain Estates, as well as 245 undeveloped acres that bordered Section C. On 9 September 1985, defendant recorded the Declaration of Restrictive Covenants, Conditions, Stipulations, Easements, Reservations and Affirmative Obligations of Section D of Utah Mountain Estates ("Declaration D") with the Haywood County Register of Deeds. Declaration D referenced a plat recorded on 21 August 1985 that indicated which of the 245 acres would comprise Section D of Utah Mountain Estates. The recorded plat also indicated that the northern end of Section D shared a boundary line with land owned by Hazel Hines, and further indicated that the northeast end of Section D and the east side of the Hazel Hines property shared a boundary line with land owned by Weaver Chambers.
Beginning in 1988, defendant started to acquire his partners' interests in Utah Mountain Estates and, by 2002, defendant was "the sole owner and developer of Utah Mountain Estates." In May 2001 and March 2002, defendant became a record owner of two portions of the Weaver Chambers property. On 31 July 2003, defendant recorded the Declaration of Restrictive Covenants Conditions, Stipulations, Easements, Reservations, and Affirmative Obligations of Sections F & G, Utah Mountain Estates ("Declaration F & G"). Declaration F & G sought to incorporate the portions of the Weaver Chambers property acquired by defendant as Sections F and G "into [the] restricted residential subdivision [of Utah Mountain Estates], with a common scheme of development and a common road system."
On 8 April 2004, defendant became the record owner of the Hazel Hines property. On the same day, defendant recorded the Amendment to Declaration of Restrictive Covenants, Conditions, Stipulations, Easements, Reservations, and Affirmative Obligations of Sections F & G, Utah Mountain Estates ("First F & G Amendment"). The First F & G Amendment sought to "dedicate[]" the Hazel Hines property "as a part of Section F,[1] Utah Mountain Estates, to be incorporated into and developed along with the original property forming a part of said section." The First F & G Amendment also sought to "establish[] and declare[] that the [Hazel Hines property] . . . shall be subject to all of those restrictive covenants, conditions, stipulations, easements, reservations, and affirmative obligations which are recorded in [Declaration F & G]."
On 6 August 2004, defendant acquired the remaining portion of the Weaver Chambers property. On the same day, defendant recorded the Amendment to Declarations of Restrictive Covenants, Conditions, Easements, Reservations, and Affirmative Obligations of the Various Sections of Utah Mountain Estates Subdivision ("Second F & G Amendment"). The Second F & G Amendment sought to "amend the covenants and restrictions" of Utah Mountain Estates and incorporate the newly-acquired portion of the Weaver Chambers property into Sections F and G.
Plaintiffs William A. Lewis and Cathy CopelandLewis purchased their lot in Section D of Utah Mountain Estates on 18 November 2004. Plaintiffs Jack and Susan Apgar purchased three lots in Section D on 1 September 2005. On 26 March 2007, plaintiffs[2] filed a Verified Complaint against defendant, which was amended on 29 August 2007. Plaintiffs alleged that defendant "conveyed lots out of the purported [S]ections F and G of Utah Mountain Estates along with the right to access those lots via the platted rights of way of Section D of Utah Mountain Estates without having proper legal authority." Plaintiffs further alleged that defendant recorded the First F & G Amendment and the Second F & G Amendment in 2004 for the purpose of "incorporat[ing] property obtained by [defendant] and lying adjacent to Utah Mountain Estates into the Utah Mountain Estates Subdivision," and that these amendments "were executed in violation of the Declaration [D] in that the rights of each and every property owner within Section D of Utah Mountain Estate[s] had vested prior to the time of the execution of the amendments, and the amendments materially altered the rights of those property owners." Plaintiffs requested that the trial court "declare the rights and obligations of the parties with respect to accessing areas lying adjacent to Section D of Utah Mountain Estates, and purported to be Sections F and G," and to "declare the status of the validity" of the First F & G Amendment and the Second F & G Amendment. Plaintiffs also sought to permanently enjoin defendant from using Utah Mountain Road, Angel Ridge Road and Verlynne Roadwhich plaintiffs alleged to be "[t]he primary routes of access"to access properties in Sections F and G.
On 17 May 2007 and 19 June 2007, defendant filed his Answer and his Amendment to Answer, respectively, in which he asserted numerous defenses and a counterclaim alleging that he suffered compensatory damages as a result of loss of sales by plaintiffs' "false statements" that defendant "does not for his lots in [S]ections E, F and G of Utah Mountain Estates have nonexclusive rights to the use of all roads within the entire subdivision."
On 10 March 2008, defendant moved for summary judgment as to all claims asserted by plaintiffs. On 13 March 2008, plaintiffs filed their own motion for summary judgment as to all claims asserted against defendant. On 4 June 2008, the trial court entered an order granting plaintiffs' motion for summary judgment and denying defendant's motion for summary judgment. On 10 June 2008, plaintiffs moved for summary judgment on defendant's counterclaim, which was granted in plaintiffs' favor on 24 November 2008.
On 17 June 2008, defendant filed a Motion and Request for Written Findings of Fact and Conclusions of Law with respect to the court's 4 June order that determined the parties' cross motions for summary judgment. On 24 November 2008, the trial court entered its amended order in which it concluded that defendant "does not possess legal access via the platted roadways of Utah Mountain Estates [S]ections AE to those properties he owns lying adjacent to Utah Mountain Estates" that are in "purported" Sections F and G. The court also concluded that defendant did not possess, "without the consent of every property owner within Sections AE of Utah Mountain Estates, the legal ability to convey access to third parties to those lots he owns in [S]ections F and G via the platted roadways of Utah Mountain Estates." Nevertheless, the court decreed that "[t]hose owners of lots in Section[s] F and G other than [defendant], as innocent bona fide purchasers, shall have the right to access and use their property via the platted roadways of Utah Mountain Estates," and decreed that those owners "have the right to sell and convey their property with such access." The court then permanently enjoined defendant from "any further conveyance of access to lots in Sections F and G of Utah Mountain Estates via the platted roadways of Section D." Defendant appealed and plaintiffs cross-appealed.
On 30 June 2009, defendant moved to dismiss plaintiffs' cross-appeal on the grounds that plaintiffs did not comply with Rule 13 of the North Carolina Rules of Appellate Procedure. Rule 13(c) provides in relevant part: "If an appellant fails to file and serve his brief within the time allowed, the appeal may be dismissed on motion of an appellee or on the court's own initiative." N.C.R. App. P. 13(c) (amended Oct. 1, 2009); see also N.C.R. App. P. 13(a)(1) ("Within 30 days after the clerk of the appellate court has mailed the printed record to the parties, the appellant shall file his brief in the office of the clerk of the appellate court, and serve copies thereof upon all other parties separately represented.").
Here, the record was mailed to the parties on 14 April 2009. Thus, plaintiffs were required to file a brief in support of their cross-appeal within thirty days of this mailing, absent an order granting them an extension of time to file and serve their brief. See N.C.R. App. P. 27(c)(2) (amended Oct. 1, 2009). Plaintiffs filed their appellees' brief on 20 July 2009 in response to defendantappellant's brief, but did not file a brief with this Court in support of their cross-appeal and filed no motion seeking an extension of time to file such a brief. See, e.g., Thompson v. First Citizens Bank & Tr. Co., 151 N.C. App. 704, 706, 567 S.E.2d 184, 18687 (2002) ("Plaintiff has failed to perfect his appeal. . . . Although he gave notice of appeal, he has not filed an appellant's brief. The failure to file a brief with this Court is a violation of the Rules of Appellate Procedure, and subjects his appeal to dismissal. . . . [Therefore], plaintiff's appeal is dismissed for failure to file an appellant's brief." (citations omitted)). Accordingly, defendant's motion to dismiss plaintiffs' cross-appeal is granted.
Defendant first contends the trial court erred by entering a final judgment on the action without first ordering that all necessary parties be joined in accordance with N.C.G.S. § 1A-1, Rule 19. Plaintiffs argue that we should overrule this assignment of error because defendant failed to raise the issue below. Plaintiffs cite Stancil v. Bruce Stancil Refrigeration, Inc., 81 N.C. App. 567, 574, 344 S.E.2d 789, 793, disc. review denied, 318 N.C. 418, 349 S.E.2d 601 (1986), and assert that "[a] defense of failure to join a necessary party[, pursuant to N.C.G.S. § 1A-1, Rule 12(b)(7), must] be raised in the trial court; it may not be asserted for the first time on appeal." Stancil, 81 N.C. App. at 574, 344 S.E.2d at 793. However, a careful review of defendant's brief shows that defendant is not seeking to dismiss the action because the trial court failed to join the owners of lots in Sections F and G as necessary parties, but rather only requests that this Court remand the matter to the trial court "with an instruction that the plaintiffs join all necessary parties to this matter."
N.C.G.S. § 1A-1, Rule 19(a) "requires that a person must be joined as a party to an action if that person is `united in interest' with another party to the action." Ludwig v. Hart, 40 N.C. App. 188, 190, 252 S.E.2d 270, 272, disc. review denied, 297 N.C. 454, 256 S.E.2d 807 (1979). "A person is `united in interest' with another party when that person's presence is necessary in order for the court to determine the claim before it without prejudicing the rights of a party before it or the rights of others not before the court." Id. "A judgment which is determinative of a claim arising in an action to which one who is `united in interest' with one of the parties has not been joined is void." Id. Thus, "the necessary joinder rules of N.C.G.S. [§] 1A-1, Rule 19 place a mandatory duty on the court to protect its own jurisdiction to enter valid and binding judgments." J & B Slurry Seal Co. v. Mid-South Aviation, Inc., 88 N.C. App. 1, 1617, 362 S.E.2d 812, 822 (1987).
"When the absence of a necessary party is disclosed, the trial court should refuse to deal with the merits of the action until the necessary party is brought into the action." White v. Pate, 308 N.C. 759, 764, 304 S.E.2d 199, 20203 (1983) (footnote omitted). "Any such defect should be corrected by the trial court ex mero motu in the absence of a proper motion by a competent person." Id. at 764, 304 S.E.2d at 203; see also J & B Slurry Seal Co., 88 N.C. App. at 17, 362 S.E.2d at 822 ("Since a judgment without such necessary joinder is void, a trial court should, on its own motion, order a continuance to provide a reasonable time for necessary parties to be joined.").
"`A person is a necessary party to an action when he is so vitally interested in the controversy involved in the action that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence as a party.'" Wall v. Sneed, 13 N.C. App. 719, 724, 187 S.E.2d 454, 457 (1972) (quoting Garrett v. Rose, 236 N.C. 299, 307, 72 S.E.2d 843, 848 (1952)), appeal after remand, 30 N.C. App. 680, 228 S.E.2d 81 (1976). "His interest must be such that no decree can be rendered which will not affect him." Id. (citing Gaither Corp. v. Skinner, 238 N.C. 254, 256, 77 S.E.2d 659, 661 (1953)). "The term necessary parties embraces all persons who have or claim material interests in the subject matter of a controversy, which interests will be directly affected by an adjudication of the controversy." Id. (internal quotation marks omitted). "`A sound criterion for deciding whether particular persons must be joined in litigation between others appears in this definition: Necessary parties are those persons who have rights which must be ascertained and settled before the rights of the parties to the suit can be determined.'" Id. (quoting Equitable Life Assurance Soc'y of the United States v. Basnight, 234 N.C. 347, 352, 67 S.E.2d 390, 395 (1951)).
In its 24 November 2008 order determining the parties' cross motions for summary judgment, the trial court recognized that the parties in the present case "dispute whether Sections F and G are validly part of Utah Mountain Estates." According to the record, defendant is said to have developed approximately 10 of the 55 acres comprising the former Hazel Hines property, and to have sold seven of the developed lots in Section G between July 2005 and February 2008. Defendant is also said to have developed approximately 33 of the 72 acres comprising the former Weaver Chambers property, and to have sold 18 of the developed lots in Section F between July 2003 and January 2008. Hence, a determination by the trial court of the issue of whether Sections F and G are a part of Utah Mountain Estates would affect the rights of those owners who purchased lots in Sections F and G following the recordation of Declaration F & G on 31 July 2003, and of the First F & G Amendment and Second F & G Amendment in April and August 2004, respectively.[3] Thus, the interests of owners of lots in Sections F and Gseveral of whom joined in the filing of an amicus brief with this Court in support of defendant's position on this issueare such that no decree can be rendered in the adjudication of this controversy which will not directly affect them. See Wall, 13 N.C. App. at 724, 187 S.E.2d at 457.
Since the court included in its 24 November 2008 order a special exemption from its decree for "[t]hose owners of lots in Section[s] F and G other than [defendant who were] . . . innocent bona fide purchasers" and who acquired such lots between July 2003 and February 2008, it appears that the court recognized that its decree would directly affect the material interests of the owners of lots in Sections F and G. Nevertheless, the trial court's failure to continue the action ex mero motu and to order that the owners of lots in Sections F and G be joined as parties to this action was in error. Therefore, the trial court's 4 June 2008 and 24 November 2008 orders granting plaintiffs' motion for summary judgment and denying defendant's motion for summary judgment are void. Accordingly, we vacate the trial court's orders entered on 4 June 2008 and 24 November 2008 that determined the parties' cross motions for summary judgment, and remand with instruction to join those parties deemed necessary to the action consistent with this opinion. Our disposition renders it unnecessary to address defendant's remaining assignments of error.
Additionally, although defendant gave notice of appeal from the trial court's 24 November 2008 order granting plaintiffs' motion for summary judgment on defendant's counterclaim, defendant made no assignments of error in support of his appeal from that order. Thus, we deem that defendant has abandoned his appeal from the trial court's 24 November 2008 Order Granting Plaintiffs' Motion for Summary Judgment Regarding Defendant's Counterclaim and, consequently, this opinion should not be construed to affect the validity of that order.
Vacated and remanded.
Judges ELMORE and GEER concur.
Report per Rule 30(e).
NOTES
[1] The record indicates that the Hazel Hines property is now recognized as comprising Section G and the Weaver Chambers property is recognized as comprising Section F.
[2] The named plaintiffs in the March 2007 Verified Complaint included Nancy Lee Porter and the Associated Property Owners of Utah Mountain Estates, Inc. ("APOUME"), in addition to the Lewis and Apgar plaintiffs. Ms. Porter, who purchased two lots in Section D on 27 August 1993 and 5 July 2000, died after the filing of the present action. On 29 August 2007, the executrix of Ms. Porter's estate moved to voluntarily dismiss the estate's claims against defendant, stating that "the Estate of Nancy Lee Porter d[id] not want to participate any further in this action." Two months earlier, on 26 June 2007, APOUME voluntarily dismissed its claims against defendant. Thus, according to the record, only the Lewis and Apgar plaintiffs remain in the present action.
[3] We note that, although the trial court concluded that defendant "attempt[ed] in 2004 to amend the Declaration [D] and incorporate those properties" located in Sections F and G into the Utah Mountain Estates subdivision, (emphasis added), according to its plain language, the First F & G Amendment was filed in April 2004 for the purpose of incorporating the Hazel Hines property into Sections F and G of Utah Mountain Estates by "establish[ing] and declar[ing]" that such property "shall be subject to all of those restrictive covenants, conditions, stipulations, easements, reservations, and affirmative obligations" of Declaration F & G. We also note that plaintiffs have not challenged the validity of Declaration F & G, which sought to incorporate the portions of the Weaver Chambers property first-acquired by defendant as Sections F and G "into [the] restricted residential subdivision [of Utah Mountain Estates], with a common scheme of development and a common road system." (Emphasis added.) In light of our disposition, however, we render no opinion as to whether these facts are determinative of any of the claims raised by the parties in this action.